JOHN FELCH & *als.* in Equity, *versus* WILLIAM HOOPER & *al.*

Where one H purchased a tract of land of F, in payment of which he gave his notes and a mortgage of the premises purchased; and then sold the same to one C who procured the notes of B, secured by a mortgage of the same tract, with which he paid H in part for the land by him so purchased, without disclosing the fact that B had no title to the same; and H exchanged those notes and mortgage with F for his own notes and mortgage, without disclosing the above facts; *it seems* that the Court would enjoin C from setting up his title against that conveyed by B.

The widow being entitled to a distributive share of the personal estate of her husband, is not a competent witness in a bill brought to establish the validity of a mortgage by which certain notes belonging to his estate, are secured.

The answer of one co-defendant is not evidence against another.

The executor or administrator is a necessary party to a bill brought to enforce a mortgage securing notes due to the estate.

Where the objection of want of proper parties was not taken at the hearing, the Court may order the case to stand over on terms, with liberty for the party to amend by adding new parties.

BILL in equity, against Wm. Hooper and Henry Cobb.

The plaintiffs in their bill allege that prior to Aug. 1, 1835, one Abijah Felch, the father of these complainants, was seized in fee of certain lots of land in Limerick plantation, containing 1280 acres; that being so seized, William Hooper, one of these respondents, applied to said Abijah to purchase said land, and took a bond for thirty days of said land on certain terms therein specified; that before the bond expired, said Hooper complied with the terms of said bond, and took a deed of the same, giving at the same time to said Abijah three notes of hand, amounting in all to $1440, in three years, secured by a mortgage on the premises conveyed; that said Hooper represented that he had sold the land to Henry Cobb, who was a man of property, and wished the said Abijah to agree that if he should sell to a responsible person, that he would take the notes and mortgage of said purchaser in exchange for those of said Hooper, to which the said Abijah, not suspecting any fraud, agreed; that before this time said Hooper had conceived the design to defraud the said Abijah; that in pursuance of said design, said Hooper went to Boston, and on Aug. 20, 1835, conveyed the whole of said lots to said Cobb, together with

1920 acres which the said Hooper had procured in the same collusive manner of one E. Baxter, for the nominal consideration of $10,000, no part of which, as these complainants believe, was paid or secured by said Cobb ; but that said Cobb received the deed in trust, in whole or in part, for said Hooper ; that said Cobb well knew the manner of said Hooper's purchase, and that the land had not been paid for, and that the same was subject to a mortgage, and in order to free it from said mortgage, and with intent to defraud said Felch, said Hooper and Cobb applied to one Nath'l Blanchard, who was utterly insolvent, and told him that if he would give his notes, corresponding with those given by Hooper to A. Felch, and sign a mortgage deed of the land described in said Hooper's mortgage, that he should have five or six lots of land for so doing, and that he should have nothing to pay for the same ; that said Blanchard signed notes and a mortgage of said lots running to said Abijah ; that said Blanchard had no title to the land, that having so signed said notes and mortgage he delivered the same to said Hooper ; that said Hooper took the same to said Abijah a short time before his decease, and falsely represented to him that he had sold the land to the said Blanchard, and had conveyed the same to him by deed, and had taken from him these notes, and a mortgage ; that said Blanchard was a man of wealth, and worth $40,000 ; and said Hooper proposed that said A. Felch should accept said Blanchard's notes and mortgage in exchange for his own ; that said A. Felch, confiding in the integrity of said Hooper, and not knowing that the title was in said Cobb, delivered up to said Hooper his notes and mortgage, and received in exchange therefor the notes and mortgage of said Blanchard, which were utterly worthless.

The bill further alleges that these complainants are the heirs at law of said Abijah Felch, and that by the fraud of said Hooper they have been deprived of their inheritance.

The bill further prays that said Cobb may be compelled to convey the premises to him conveyed by said Hooper, to secure the amount due from him ; or that said Hooper may be compelled to restore the plaintiff the notes or mortgages fraudu-

lently taken by him, and that the respondents may be enjoined from selling said land, or from lumbering on the same, and for such relief, as the plaintiffs are entitled to have.

The respondent, William Hooper, admitted the purchase of said Abijah Felch, of the land described in the bill; that he took a deed in August, 1835, and paid a quarter in cash, and gave his notes on one, two, and three years, secured by mortgage; that he told the said Abijah that he expected to sell the said land to Henry Cobb, and wished to know if he would take his notes and mortgage in exchange for his own, to which he replied that he thought he would; that he immediately went to Boston, having previously given a bond in the penal sum of $500, to procure a warranty deed of the same; that he saw said Cobb before the expiration of the bond, who informed him that he had sold the same to one Blanchard, and requested him to take the notes and mortgage of said Blanchard in part payment, representing said Blanchard to be a man of property, and that he had credited him to the amount of from $3000 to $5000; that induced by these statements he consented to do as requested; that at a time agreed upon, they went to the office of E. G. Loring, Esq.; that he there met Cobb and Blanchard; that he there gave a warranty deed to said Cobb of the land purchased of Abijah Felch, and took the notes and mortgage of said Blanchard; that after the deeds were executed, he compared deeds to see if the description of the lots included in the mortgage of Blanchard corresponded with those he conveyed to Cobb; that Cobb was present, and assisted in comparing deeds; that before the deeds were drawn up, he told Cobb that he wished the notes and mortgage of Blanchard to run to A. Felch, as he expected to exchange them with said Felch for his own paper; and that if he did not effect the arrangement with Felch he must procure Blanchard's notes and mortgage running to him, and take up those running to Felch; that Blanchard and Cobb both assented to these propositions, and that the papers were accordingly drawn up, running to said Felch; that he afterwards met Cobb at his store, and there completed the bargain, and took the notes and mortgage of

Blanchard; and that A. Felch afterwards took Blanchard's notes and mortgage in exchange for his own.

Henry Cobb, in his answer, admitted the conveyance from Felch to Hooper, and the mortgage back, but denied all knowledge of the existence of the mortgage to A. Felch at the time of his purchase. He further asserted, that he purchased believing Hooper had a good title; that on Aug. 20, 1835, said Hooper conveyed to him the lots purchased of Felch and Baxter, but denies he received said deed in trust for said Hooper, or with design to defraud; he asserts the consideration of the deed to be $10,000; that he paid $2800 in money, the sum of $3200 in permits to take timber from said lots, and $3600 in the notes of said Blanchard; that he did not know when said notes of Blanchard were due, but that he believes they were not paid at maturity; that said bargain was in good faith, and with no design to defraud said Felch, and with no knowledge that said Hooper had any such design on his part, or that he intended to transfer them to said Felch; that said Blanchard was a shoe dealer, in good credit; that his (Blanchard's) notes were given without any fraudulent design on his part, but with the expectation that they would be paid at maturity; but denies that he offered said Blanchard four or five lots, or any of said lots, if he would sign said notes and mortgage; denies that he knew of any representations of Hooper to Felch, in relation to the exchange of the notes of Hooper for those of any one else, or that he knew at the time he gave said Hooper said notes of Blanchard, he, Hooper, intended to make any fraudulent use of them; and denies all combination or conspiracy.

The complainants introduced the deposition of Sally Felch, the wife of Abijah Felch, and the mother of the complainants, to prove certain material allegations in the bill, and other proof of the facts contained therein which it is not material to report.

*F. Allen*, for the plaintiffs, cited *Wendell* v. *Van Rensallaer*, 1 Johns. Ch. 344; *Story* v. *Barker*, 6 Johns. Ch. 166; 1 Story's Eq. 376; Fonb. Eq. 131; *Tilling* v. *Armitage*, 12 Ves. 84; 2 Atk. 83; *Shannon* v. *Bradstreet*, 1 Sch. & Lef. 73; *Rogers* v. *Saunders*, 16 Maine R. 106.

*Thacher,* for the defendants, referred the Court to 2 Mad. Ch. 416; Story's Eq. Pl. 415; Milford's Eq. Pl. 234; and insisted that S. Felch was an incompetent witness, being interested in the personal estate of her husband.

The opinion of the Court was by

SHEPLEY J. — The case is not presented in such a manner as to entitle the plaintiffs to a decree in their favor. If the necessary parties were before the Court, they might perhaps by competent proof show, that the defendant, Cobb, procured the mortgage from Blanchard to Felch to be made, and that he was present and consented that Blanchard should thus convey the title to the land, and made no communication, that he had not conveyed to Blanchard, or that Blanchard's title was not good; and thus lay the foundation of a decree, that Cobb should not set up his title against that conveyed by Blanchard. But no such decree can be made between the present parties, or on the present proofs. The testimony of the widow must be excluded. She is apparently entitled to a distributive share of the personal estate of her late husband composed in part of these notes, and therefore interested to establish the validity of the mortgage, by which they are secured.

Hooper, one of the defendants, was irregularly examined as a witness without any order of the Court therefor; and having failed to answer, the counsel agreed, that his deposition should be regarded as his answer. It cannot be considered under these circumstances as before the Court in any other character than as an answer. And the answer of one defendant is not evidence against another. *Morse* v. *Royal,* 12 Ves. 355; *Leeds* v. *Marine Ins. Co.* 2 Wheat. 380.

There is also a defect of parties. The executor or administrator is by our law entitled to control the notes and the mortgage, by which their payment is secured; and is therefore a necessary party to a bill, that will operate upon the security, which it is his duty to protect and enforce.

But as the objection for want of proper parties was not taken till the hearing; the Court may order the case to stand

over on terms with liberty for plaintiffs to amend by adding new parties. *Jones* v. *Jones*, 3 Atk. 110.

Such an order may be obtained, if desired, and if not, the bill is to be dismissed.