Morse *v.* Machias Water Power and Mill Company.

SAMUEL A. MORSE & *al. versus* MACHIAS WATER POWER AND MILL COMPANY.

The process of injunction should be applied with the utmost caution.  It must be a strong case of pressing necessity, or the right must have been previously established by law, to entitle a party to call to his aid this strong arm of the Court.

The interposition of a court of equity by injunction, must be based on a clear and certain right in the petitioner, to the enjoyment of the subject in question, and an injurious interruption of that right, which, on just and equitable grounds, ought to be prevented.

If it shall appear to the Court, when an injunction is asked, that other parties than those named in the bill are interested in the result, the Court itself may state the objection and refuse to make a decree; or, if a decree be made, it may, for this defect, be reversed on a re-hearing or an appeal; or, if it be not reversed, it will bind none but the parties to the suit and those claiming under them.

The general rule in equity is, that all persons legally or beneficially interested in the subject matter of a suit should be made parties thereto.

BILL IN EQUITY.   The cause was heard upon bill, answer and proof.   The prayer of the bill was, that the respondents might be restrained by a decree of the Court from making wider and deeper the channels through which certain mills upon the Machias river were supplied with water.

The facts in the case, are fully stated in the opinion of the Court.

*George Walker,* for petitioners.

By the R. S., c. 96, § 10, general chancery powers are conferred so as to embrace the whole field of chancery jurisdiction.   This case comes within the class denominated nuisance. U. S. Equity Digest, Title Nuisance, paragraphs 40, 41.

This Court, as a court of equity, will interfere, when the act threatened, if done, would work irreparable mischief. The ground of the jurisdiction is to prevent the threatened injury; to preserve the property with its natural advantages. 2 Story's Equity Jurisprudence, § § 710, 926, 927, 928; *Livingston* v. *Reynolds,* 26 Wend. 115.

Also, when a plain, adequate, and complete remedy at com-

mon law cannot be had.  2 Story's Equity Jurisprudence, § § 710, 718; 1 Story's Equity Juris. § 33.

Also, when the act done would lay the foundation for a multiplicity of suits, and vexatious litigation.  2 Story's Equity Jurisprudence, § § 901, 926.

The respondents, by their deed of Dec. 8, 1847, to the complainants, covenanted that they and those claiming under them should have the property named in the bill with all the privileges and appurtenances to the same belonging.  By their act they were taking away the privileges in violation of their covenants.  2 Story's Equity Jurisprudence, § § 710, 718, 721, 722, 850, 927; 2 U. S. Digest, (Equity) Title Mill, paragraph 1; *Kennedy* v. *Seavel*, 12 Con. 317; *Livingston* v. *Reynolds*, 26 Wend. 115; *Pennsylvania* v. *Wheeling Belmont Bridge Company*, 13 Howard, 519.

The injury in this case would be irreparable, the common law would give no adequate relief, it would lay the foundation for a multiplicity of suits, and is in violation of express covenants.

The license or grant from the Phœnix mill owners to Smith & Bowles, under which the defendants attempt to justify, was between other parties, and does not bind the old Rock mill owners or those claiming under them.

As to the question of damages, there is no rule as to what amount of damages must be suffered before equity will interfere.  It is sufficient if a right has been infringed upon, which, if persisted in, will end in great damage to, or total destruction of the right.  *Webb* v. *Portland Manuf. Co.* 3 Sumner, 189; *Boliver Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241.

Any unlawful deepening of a channel, or diverting water, is an injury, and a good cause of action.  *Blanchard* v. *Baker*, 8 Greenl. 258; *Pender* v. *Wadsworth*, 2 East, 154; *Hodsdon* v. *Todd*, 4 T. R. 71, 73.

*Peter Thacher*, for respondents.

The rights of the owners of the single mill, as to the excavation of the channel leading by their mill to the defendants'

mill, are co-extensive with those granted by the owners of the Phœnix mill to Smith & Bowles, Aug. 30, 1848.

The corporation defendants are entitled to all the rights touching such excavation that belong to the owners of the single mill, and to any defence which they could make, were they parties defendant to this bill.

Such channel as excavated, or as proposed so to be, is still within the conditions of such original grant to Smith & Bowles.

The plaintiffs are, therefore, estopped by the deed to the defendants, dated May 9, 1837, to deny to the new owners of the single mill the rights as to water originally granted Bowles & Smith, and expressly confirmed by said deed, and by consequence to maintain this suit against the corporation.

This is none the less true, if it be admitted that the Rock mill (to wit, the old Rock mill,) had rights, as an ancient mill, to its proportion of the water of the pond and river, which could not be controlled by any grant of the proprietors of the Phœnix.

The plaintiffs are also estopped by the deed of Morse & Holway to the defendants of May 1, 1837, conveying the Rock mill and the new Rock mill, to deny to the defendants the right to deepen the channel to the extent claimed. Such grant necessarily carries with it a right to the water equal to that possessed by the old Rock mill, certainly all that was necessary to the beneficial use of the new Rock mill. *Wyman* v. *Farrar*, 35 Maine, 64; Angell on Water Courses, Ed. of 1851, § § 155, 157; *Bardwell* v. *Ames*, 22 Pick. 358.

The new Rock mill is entitled to draw its water and receive its logs directly by the channel of the old Rock mill. Nor could it be debarred of such right except by an exclusion from this channel of twenty years, or by grant. The evidence shows the defendants' using this channel up to 1844 or 1846. The defendants' deed to Morse, senior, of Dec. 8, 1847, is not such a grant. *Wyman* v. *Farrar*, 35 Maine, 64.

The plaintiffs present no equitable grounds of complaint or for relief. The excavation is decidedly for their advantage; it leaves them with a channel fifteen inches deeper than

defendants', with a disclaimer of intention of further deepening, instead of being obliged to divide with defendants the waters of the old channel, attended with all the inconvenience of the passage through it of defendants' logs.

The deepening is reasonable in any view, and essential for the purpose of floating logs to the defendants' mill, so that the mill may be used so long as it receives water enough to carry it.

The presumption, from the fact that the owners of the north saw in the old Rock mill, make no complaint, is, that they regard the deepening of the channel as rightful, or as no injury.

But if the excavation cause any diversion of the water, it is too trifling to justify any interference of the Court. At most, it is only *damnum absque injuria*. *Shrove* v. *Vorhees*, 2 Green's Ch. 25.

If there be a cause of complaint, it is not such an one as will authorize the Court to grant an injunction. There is a plain and adequate remedy at law. There is no such irreparable, remediless injury, as affords ground for an injunction, until the question of right is settled at law. *Dana* v. *Valentine*, 5 Met. 8; *Webster* v. *Clark & al.*, 25 Maine, 313; *Galvin* v. *Shaw*, 12 Maine, 454; *Attaquin & al.* v. *Fish*, 5 Met. 140, pp. 148–9; Lord Elden, in *Norway* v. *Rowe*, 19 Ves. 146; *Porter & al.* v. *Witham & al.*, 17 Maine, 202; *Ingraham* v. *Dunnell & al.*, 5 Met. 118; 3 Danl. Chanc. Prac. p. 1850, note 1, p. 1854, note; *Olmsted* v. *Loomis*, 6 Barb. Chanc. 187; *Read* v. *Gifford*, 6 Johns. 19; U. S. Equity Digest, "Equity," § § 238, 242—4.

*Webb* v. *Portland Manuf. Company*, 3 Sum. 189, is not a case in point against us, because this Court has but limited equity jurisdiction. See *Attaquin* v. *Fish*, 5 Met. 140.

In *Stevens* v. *Stevens*, 11 Met. 251, the dam and ditch complained of had been adjudged a nuisance at common law. And so in *Bemis* v. *Upham & al.* 13 Pick. 169. See also *Porter & al.* v. *Witham & al.* 17 Maine, 292.

An injunction cannot be granted, because the acts to pre-

vent which, it is solicited, have been done. The channel has been excavated. *Att'y General* v. *New Jersey Railroad & Transportation Co.* 2 Green's Ch. 136.

But if no one of these grounds can be sustained, the plaintiffs must fail, because the bill is fatally defective in the want of the appropriate parties defendant. Defendants and the owners of the single mill, should have been joined. The objection is now well taken. *Felch* v. *Hooper*, 20 Maine, 159; Story's Eq. Pl. § 72; 1 Danl's Chanc. Prac. 240, 329; *Houghton* v. *Davis*, 23 Maine, 28; *Hussey* v. *Dole*, 24 Maine, 20.

TENNEY, C. J. — It appears from the bill, answer and proof, that the mill Phœnix was built in the year 1763; — that it stands upon the north side of the Machias river, upon or below a dam erected across the same at the lower falls, and was the first mill built at that place; — that the privilege extends to the thread of the stream; — that at a time not particularly specified, another saw-mill, having therein two saws and other machinery for the manufacture of lumber, was erected by the owners of the Phœnix on the land and privilege belonging to them, called the "Rock mill"; — that on August 30, 1828, George S. Smith and Stephen S. Bowles were owners of a portion of the privilege on which the mill Phœnix stands, and of that mill and of the "Rock mill," situated thereon.

On that day, all the owners of these mills and the privilege on which they stand, excepting said Bowles and Smith, conveyed to said Bowles premises, including a water privilege, upon the lower falls on Machias river, particularly described in their deed, for a mill privilege; and, "also the right of drawing water from the pond for any kind of water-works, to be taken out on the premises above described, and used each season, so long as both saws in the mill Phœnix shall go without taking turns"; that on Sept. 4, 1828, the proprietors of Machias laid out and located to said Smith and Bowles, the same tract of land, which was conveyed to the said Bowles by said deed, dated Aug. 30, 1828, of the proprietors

of the mill Phœnix, on which was built the "single saw-mill," so called;—that on Feb. 8, 1830, Stephen S. Bowles released to George S. Smith all his interest in one undivided third part of a certain mill privilege, being the same on which the said Bowles and said Smith built a single saw-mill, during the year then last past, and improved by them in the proportion of two-third parts by said Bowles, and one-third part by said Smith, meaning to release and convey one-third part of that privilege, to which he was entitled under the deed from the owners of the privilege on which the mill Phœnix stood, dated August 30, 1828.

It further appears, that by clearing out the logs and drift from the river, and by blasting the ledge in the bed thereof, and the removal of rocks and other materials, and by the erection of a bulkhead, a channel or conduit from the dam and mill-pond was constructed, through which water was taken out on the premises described in the deed of August 30, 1828, for the operation of the wheels and machinery of the "single mill";—that afterwards, in the year 1836, Smith and Bowles, and other owners of the mill Phœnix, the "Rock mill" and the privilege on which they stood, built a double saw-mill, with lath mills and machinery attached, upon the southern side of the "Rock mill," upon the same privilege, called the "new Rock mill";—that the machinery of the latter has been propelled by water taken from the dam and pond, through the channel or conduit leading to the "single mill," and therein through another channel or conduit from the "single mill" to the "new Rock mill."

It is shown also by the bill, answer and proof, that Samuel A. Morse, one of the plaintiffs, and John Holway, having obtained title to a portion of the mill Phœnix, a portion of the "old Rock mill," a portion of the "new Rock mill," and a portion of the "single mill," including lath mills, and all machinery therein, and the privileges and appurtenances respectively belonging to each of said mills, in the same proportion of the title to the mills, conveyed the same to the defendants on May 9, 1837, with all the privileges and appurtenances

belonging to the same, as they were conveyed to them, with covenants of warranty; and on Dec. 8, 1847, the defendants conveyed with like covenants, to the plaintiff, Samuel A. Morse, one undivided half of the mill-site on which the "old Rock mill" stands, together with the south side or saw in the same, and the lath mill belonging to the said south side or saw of said double saw-mill, with all the privileges and appurtenances belonging to said south saw and lath machine; — and that afterwards, the said Samuel A. Morse conveyed one-fourth part of the same to Samuel A. Morse, jr., the other plaintiff.

It is admitted in the answer, that before the bill was filed, it was the design of the defendants to make deeper and wider the channel from the dam and pond to the "single mill," and to make a similar change in the channel thence to the new Rock mill; that contracts had been executed, under which the change in the channels was expected to be made, which contracts were partially fulfilled, and were in progress of completion, when the bill was filed.

The prayer of the bill is, that the defendants may be restrained by a decree of this Court from further deepening the channels aforesaid, or from bringing the water through the same when so deepened.

The defendants insist that as the deed from the owners of the "single mill" privilege to Bowles of Aug. 30, 1828, confers the right to draw water from the pond for any kind of water-works, subject only to the limitation therein expressed; and as the plaintiffs claim under deeds from the owners of the "Phœnix," the "old Rock mill," the "new Rock mill," and the "single mill," and the respective privileges and appurtenances of each, and as the defendants' title to the same is by virtue of a deed with covenants of warranty, one of the grantors of which was Samuel A. Morse, the plaintiff, he is bound by all the grants, stipulations and covenants, contained in the deeds to which he was so a party, or a privy; and that the alterations aforesaid, as designed by the defendants, will

not take water from the dam and pond when the saws in the mill Phœnix will go by turns only.

Whatever were privileges and appurtenances belonging to the portions of the mills conveyed by Samuel A. Morse and John Holway with the mills, passed by their deed to defendants. The grantees in the deed of the site of the "single mill," having the express right to take water out on the premises for any kind of water-works, &c., that right by subsequent conveyances passed to the defendants. And as the defendants' grantor, Samuel A. Morse, had at the time of the conveyance of the "new Rock mill" with its privileges and appurtenances an interest therein, under those who had title to the same, and as the water for the operation of the wheels and machinery in that mill, passed through the channel from the pond and dam to the "single mill," and thence to the "new Rock mill," it is not seen how he can legally insist that the right thus to take the water for the latter, as used by him and other proprietors, did not pass to the defendants as appurtenant to that mill. But as it appears that in 1836, the time the "new Rock mill" was erected, a channel was constructed to it from the "single mill," and water taken through it and used for the latter, not *on* the premises described in the deed to Bowles of Aug. 30, 1828, the use of that channel would have been in violation of the rights of any owner of the " old Rock mill," who sustained injury thereby, provided he had given no consent to its construction. Samuel A. Morse, a present owner in the Rock mill, as owner or privy to those who were owners in that mill, and in the "new Rock mill," did consent thereto, by aiding in the construction of that channel; and that right has passed to the defendants, (so far as Samuel A. Morse owned it,) by his deed.

But it may be doubtful at least, whether the right claimed to make deeper and wider the channel to the " new Rock mill," after the plaintiff, S. A. Morse, has parted with his interest therein, and after he has acquired an interest in the "old Rock mill" from the defendants, can be sustained in law.

As privy to the former ownership of the mill Phœnix and the old Rock mill privilege, when the proprietors thereof conveyed the site of the "single mill" and privilege with the right to take water, &c., he cannot object to the exercise of that right, according to its legal interpretation. As an owner in the "new Rock mill," with the privileges and appurtenances thereto belonging, his deed thereof transmitted the right to convey water thereto in the channel from the "single mill," because he had so used it to the date of his deed, and it passed as appurtenant to that mill. The deed to Bowles of Aug. 20, 1828, did not convey the right to take water out of the pond on the site of the "new rock mill;" and the defendants having only the right of Morse and Holway to them, can they enlarge the channel beyond its condition, when it passed to them to the injury of the estate acquired by the plaintiffs since that time ?

The channel from the pond and dam, to the "single mill," having remained unaltered, so far as any thing appears in the case, from the time of its construction, it is a question of law whether the defendants, as owners in that mill, are entitled to deepen and extend in width the same, and disturb the rights of other parties which may have since commenced and matured without objection.

These are questions of great importance, and we are to consider whether they can be entertained and decided in the action as it stands before us.

The process of injunction should be applied with the utmost caution. In the language of Chancellor KENT, in *Attorney General* v. *Utica Insurance Co.*, 2 Johns. Ch. 378, "it is the strong arm of the Court, and to render its operation benign and useful, it must be exercised with the greatest discretion, and when necessity requires it." "The English court of chancery rarely uses this process, except when the right is first established at law, or the exigency of the case renders it indispensable." But there are cases, where the jurisdiction will be exercised, notwithstanding the plaintiff has not established his title at law; and this is done, to prevent or remove

a private nuisance, erected to the prejudice or annoyance of a right, which the other party has long *previously* enjoyed.

It must be a strong case of pressing necessity, or the right must have been previously established by law, to entitle the party to call to his aid the jurisdiction of this Court. *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. 287.

In Brown's case, 2 Vesey, 414, Lord HARDWICKE intimated that the title must have been established at law, or the party have been in the previous enjoyment of the subject for at least three years, before he would interpose by injunction in the case of a private nuisance.

In *Bush* v. *Western*, Prec. in Ch. 530, a plaintiff who had been in possession for a long time, of a water course, was quieted by an injunction against the interruption of the defendant, who had diverted it, though the plaintiff had not established his right at law. Chancellor KENT, in view of this and other cases, remarks, that they show the ancient and established jurisdiction of this Court, and the foundation of that jurisdiction is the necessity of a preventive remedy, when great and immediate mischief or material injury would arise to the comfort and useful enjoyment of property. The interference rests on the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right, which on just and equitable grounds ought to be prevented. *Gardner* v. *Village of Newburg*, 2 Johns. Ch. 164.

But it was said by Lord ELDON, that there were private nuisances, which would support an action on the case, but which would not support an injunction. The jurisdiction of the Court was put upon the ground of material injury, and of that special and troublesome mischief, which required a preventive remedy, as well as a compensation in damages. *Attorney General* v. *Nichol*, 16 Vesey, 338.

In this case, the defendants have attempted to make changes in the channel leading to the single mill, and thence to the new Rock mill, which they must be supposed to consider for the improvement of those mills. The channel, before the

attempted change, had been for nearly twenty years in use as it was first constructed in all its parts; and between the dam and the single mill from the year 1828.

The contemplated alteration may operate so essentially to the injury of the plaintiffs that the preventive remedy ought to be applied; on the other hand, the mischief may be so inconsiderable, that the remedy at law may be fully adequate. If the questions involved were presented in a suit, where all parties interested were before us, we might with propriety determine those questions, in restraining the party by the decree sought; or in dismissing the bill because the rights of the parties under their deeds had not been established at law, or on the ground that the law furnished an adequate remedy.

But it is quite apparent from the bill, answer and proof, that other parties are interested equally with those named in the bill.

If the proper parties are not made, the Court itself may state the objection, and refuse to proceed to make the decree; or if a decree is made, it may for this very defect be reversed on a rehearing or an appeal; or if it be not reversed, yet it will bind none but the parties to the suit, and those claiming under them. Story's Equity Pleadings, § 75.

The general rule in equity is, that all persons legally or beneficially interested in the subject matter of a suit should be made parties. Story's Equity Pleadings, § 77.

*Bill dismissed without costs.*

APPLETON and GOODENOW, J. J., concurred. RICE, J., concurred in the result.