Anderson v. Baumgartner.

———◦◦◦◦◦———

ANDERSON, Respondent, v. BAUMGARTNER et al., Appellants.

1. The transfer of a debt secured by mortgage or deed of trust carries the security with it as an incident; if several promissory notes, secured by the same instrument, be assigned to different persons, the assignee of each note will, as a general rule, acquire an equitable interest in the mortgage.

2. The interest which the assignee thus acquires in the security is purely equitable; it may be lost through his negligence; it will be so lost where the rights of innocent purchasers intervene who have been misled by improper representations on his part or lulled into security by his silence when it was his duty to speak.

### Appeal from St. Louis Land Court.

The object of this suit was to compel the trustees under a deed of trust to advertise and sell the premises described therein, and to apply the proceeds in payment of certain promissory notes alleged to be secured by said deed. Baumgartner and Robbins, the trustees, and Andrew Christy, the assignee of other notes secured by the same deed of trust, and George B. Michael, the purchaser at a sale under a junior deed of trust, were made parties defendant to the suit. The petition states in substance that on the 19th day of May, 1846, one John S. Watson made forty promissory notes, payable to George M. Moore; that nineteen of these notes were for the sum of eighty dollars each, and were made payable consecutively at intervals of three months from their common date, May 19, 1846; that twenty of these notes were for $100 each, payable consecutively every

three months after five years from their common date; that one of said notes was for $4,000, payable in ten years from date; that the plaintiff, Anderson, is the *bona fide* assignee and holder under Moore of seven of said notes, to-wit: those payable in 51, 54, 57, 60, 63, 66 and 69 months from date; that all those falling due prior to said seven notes held by plaintiff were paid and satisfied; that all the other notes had been assigned to Andrew Christy; that to secure said notes Watson gave a deed of trust on certain real estate, in which deed Baumgartner and Robbins were named as trustees; that Michael subsequently became the purchaser of the estate of Watson in the land embraced by said deed of trust, and holds subject to said deed; that at the time of his purchase he had both actual and constructive notice that the seven notes held by the plaintiff were a charge on the land and were unpaid. The plaintiff prayed the court for an order " requiring and directing said Baumgartner and Robbins to advertise and sell the premises described in said deed of trust, in the manner in said deed provideed, and to apply the proceeds of such sale, according to the provisions of said deed, first, to the payment of the costs and expenses of said trust; next, to the payment of plaintiff's demand, and the balance," &c.

The defendants, Michael, Christy, and Baumgartner, answered alleging that after the making of said deed of trust by Watson to Moore, Watson made, on the 3d day of June, 1851, another deed of trust of the same premises to the plaintiff as trustee to secure a note of $7,000 to one Barclay, payable in one year after date; that, shortly after, plaintiff, Anderson, purchased and became the owner of this last mentioned note and deed of trust; that the seven notes mentioned in the petition became due and unpaid and a sale under the deed of trust to Moore was advertised; that, before the day of sale, said notes were paid by Watson or the plaintiff and were given up to be cancelled; that immediately thereafter Moore transferred the remaining notes to Christy and assigned to him the deed of trust; that afterwards the plaintiff made

a sale of the premises to satisfy the second deed of trust to Barclay; and applied to Michael to become the purchaser, representing that there was nothing unpaid on the first deed of trust except the notes transferred to Christy; that Michael applied to Moore and Christy for information, and was told by them that nothing was due on the first deed of trust except the notes in the hands of Christy; that on the faith of these representations Michael became the purchaser under the second deed of trust at the sum of $7,500; that he had no notice that said seven notes were subsisting encumbrances on the land; that Christy had no notice at the time of his purchase that said seven notes were still unsatisfied; that Baumgartner· refused to sell the land for the satisfaction of said notes, because he was informed by Moore, while he was a holder of the first deed of trust, that the notes had been paid.

The cause was tried by the court without a jury. In its finding the court sets forth the execution of the notes and the deed of trust by Watson as stated in the petition, and then proceeds as follows: "That on the 21st day of June, 1851, said Watson executed a second deed of trust on the same property to the plaintiff as trustee to secure the payment of a second note for $7,000, payable to one Barclay; that said property was sold by said Anderson, as such trustee, under said second deed of trust, on the 6th day of September, 1852, and purchased by one Carpenter, who transferred his bid to the defendant Michael, to whom the plaintiff, as such trustee, made a deed on the 13th of September, 1852; that Michael thereby acquired all title remaining in said Watson in said property subject to senior encumbrances; that on the 16th day of March, 1851, all of said notes secured by said first deed of trust remaining unpaid and also said deed of trust were in the hands of Henry B. Belt, to whom they had previously been delivered by said Moore as collateral security for moneys advanced by Belt to Moore; that said notes, when left by Moore with Belt, were endorsed by said Moore in blank without recourse; that said property being then ad-

vertised for sale under said first deed of trust for the satisfaction of the notes then due, the plaintiff, at the time being the holder of the Barclay note secured by said second deed of trust, for the purpose of stopping said sale, and protecting his interest as junior encumbrancer, became the purchaser for value of seven of said notes then due, namely : three for the sum of eighty dollars each, payable respectively in 51, 54 and 57 months after date, and four for the sum of one hundred dollars each, payable respectively in five years, 63, 66 and 69 months after date, which were then delivered by said Belt to said plaintiff thus endorsed, and said sale was stopped ; that said seven notes were the only notes then due and unpaid ; that on the 16th of March, 1851, all the remaining unmatured and unpaid notes described in said deed of trust and the deed itself were passed over to defendant, Christy— the notes being assigned by Moore without recourse, who also transferred, in writing without seal, his interest in the deed of trust to said Christy ; that said seven notes thus purchased by plaintiff have never been paid ; and that he acquired them in good faith, and is the holder and owner of the same ; that afterwards he requested the said trustees to sell said property for the satisfaction of the notes held by him ; that Robbins was willing to execute the trust, but Baumgartner refused on the supposition that said notes had been paid, and were no longer a lien on said property.

"Thereupon the court declares the law as follows : That plaintiff is entitled to have satisfaction of his said seven notes and interest, by a sale of the property described in said deed of trust from Watson and wife to said Baumgartner and Robbins ; said sale to be made according to the terms and conditions in said deed mentioned and herein recited. And the court doth order and adjudge that said defendants, Baumgartner and Robbins, do proceed within fifty days of the date hereof to advertise said property for sale, in the manner and upon the terms specified in said deed, and that they proceed to sell the same as therein authorized, and that out of the proceeds of said sale they pay, first, the costs and expenses

of executing said trust, including the costs of this suit; secondly, whatever sum or sums of principal and interest may then appear to be due to said plaintiff upon said seven notes; and dispose of the remainder, if any, of money in their hands, as by said deed directed, and that they report their proceedings herein to this court, without delay, after making such sale."

The defendants made a motion in review, which was over-ruled.

*Field,* for appellants.

I. The testimony fairly shows that the seven notes taken up by Anderson were paid under some arrangement with Watson the debtor. But supposing that Anderson held the seven notes as assignee under Moore, he did not, in the absence of any special agreement, by the mere fact of his being owner of a part of the mortgage debt, become proprietor of the mortgage security. A mortgage is an entire thing. It must be redeemed or foreclosed for the whole and not by parcels. Anderson simply relied on the personal credit of the debtor. (See Mandeville v. Welch, 5 Wheat. 277; Langdon v. Keith, 9 Verm. 299.) Whatever may be the equity of Anderson in reference to Watson or Moore, he has no equity against Michael, who is a purchaser under Anderson himself without any notice of his pretended equity. No notice was given to Michael of the secret equity now set up by Anderson. It is no answer to say that the bidders at Anderson's trust sale were advertised of interest notes being due on the Moore mortgage. At the least, this advertisement as testified to was deceptive and misleading. It is apparent that both parties understood at the time that Michael acquired the property subject only to the Moore notes in the hands of Christy. (See Brown v. Wheeler, 1 Root, 236; Morse v. Child, 6 N. H. 521; 1 John. Ch. 354.) The conduct of Anderson is marked with excessive negligence and imprudence. He took up the seven interest notes under circumstances fairly showing that he intended to pay and extinguish them.

He asked for no assignment of any part of the mortgage to Moore. He gave no notice to Moore or his assignee and agent Belt that he claimed any interest in the mortgage. He subsequently conveys the property to Michael without any notice of his dormant equity. (Hughes v. McAllister, 15 Mo. 302.) The course of Michael was marked with that degree of caution which characterizes the conduct of prudent men in the transaction of business. He was distinctly informed by Moore that the seven notes now in controversy had been paid and satisfied. On the faith of this statement Michael became the purchaser under Anderson. Christy was assignee under Moore. The petition does not charge him with notice of Anderson's pretended equity, and no such notice is found in the decision of the court. His equity is superior to that of Anderson.

*Hill, Glover & Hill*, for respondent.

I. The court was warranted by the evidence in its finding of facts. Anderson was a purchaser of the notes in good faith. He took them by assignment as a purchaser to protect his junior encumbrance. Moore's understanding of the transaction subsequent to the transfer of the notes to Anderson, could not affect Anderson's rights as a *bona fide* assignee. Michael was not the purchaser at the sale under the second deed, nor was he present at the sale. Carpenter became the purchaser with actual notice given by Anderson at the sale of the fact that .there were notes for back interest unpaid under the first deed of trust amounting to about $800. When Anderson purchased the seven notes, they were all that were due. The seven notes amounted to $640 exclusive of interest—about $84 more. The recollection of Carpenter is vague and uncertain as to where these interest notes were said to be. At one time he says he thinks they were said to be in Christy's hands, and that Anderson referred to Christy, but says he was not certain and that his recollection was indistinct. But two notes could have matured between maturity of the last of the seven notes held by An-

derson and the date of the sale in September, 1852, and these would amount to but little more than $200 including interest to that time. It is not attempted to be shown or even pretended that Christy then held any interest notes which were due. The reasonable inference then is that Anderson referred to the back interest notes held by himself, and also spoke in the same connection of the deed of trust and remaining notes held by Christy, all which in the lapse of time had become confused in the mind of Carpenter. He is quite certain that notice was given by Anderson that interest notes were due, and thinks the amount was stated at about $800, which was in fact seventy-six dollars above the true amount, but as near as Anderson might be able to state without having the papers before him. It is only by supposing that Anderson was here speaking of the notes held by himself and as being held by him that the remaining facts in the case can be reconciled. There is not a particle of evidence that Anderson ever made any representations to either of the defendants inconsistent with the rights he claims in this suit—none that he was ever applied to for information; nor was he bound to give notice of his superior claim when selling under a junior trust. The finding should not be disturbed even though this court might find the facts differently.

II. The conclusion and judgment of the court upon the facts as found were warranted by law. The assignment of a note secured by mortgage is, in equity, an assignment of the mortgage, unless there be some special provision by the parties to the contrary. (3 Johns. Ch. 322; 1 Root, 248; 6 S. & M. 139; 4 Blackf. 539; 1 Johns. 580; 1 Penn. 280; 2 Ala. 190; Walker's Ch. 221; 10 S. & M. 631; 21 Verm. 331; 8 Blackf. 447.) The notes first maturing have a preference.

RICHARDSON, Judge, delivered the opinion of the court.

The doctrine is well settled that the transfer of a debt carries with it in equity the mortgage security; and if several

notes secured in the same mortgage are assigned to different persons, as a general rule the holder of each note will acquire by the assignment an equitable interest in the mortgage. (Keyes v. Wood, 21 Verm. 331 ; 1 Hilliard on Mortg. chap. 11 ; Thayer v. Campbell, 9 Mo. 277.) The security is only an incident to the debt ; and, if the principal be assigned and there be no agreement to the contrary, the mortgage will pass with it. The interest however which the assignee acquires in the mortgage is purely equitable, and will be controlled by the considerations that operate on courts of equity in adjusting conflicting equities between different parties. It will give way to a superior equity and may be lost by the negligence of the party asserting it. The assignment of the debt will be effectual to transfer the security as between the assignee and the parties to the mortgage, but it may be inoperative for that purpose when the rights of innocent purchasers intervene, who have been misled by the improper representations of the assignee, or lulled into security by his silence when it was his duty to speak.

It appears that when Christy purchased the notes which he holds, he was told by Moore that all the other notes had been paid ; and when Michael applied to Moore, who then held the Christy notes, for information on the subject, with the view of purchasing under the junior deed, he was likewise told that all the notes had been paid except those now in Christy's hands. If Christy and Michael did not know that the plaintiff held any of the notes, to whom else could they apply for information except to Moore ? How were they to know of the plaintiff's dormant equity ? Michael, then, having been informed by Moore that the notes which the plaintiff has had been paid, had every reason to act on the information, and no ordinary diligence could have apprised him of the plaintiff's claim. When Anderson came to sell under the second encumbrance, in which he had united in himself the double interest of trustee and beneficiary, the evidence shows that there was inquiry as to the amount due under the first deed. Common justice to the bidders required him to

give such information as he had, and, claiming an interest in the first deed, which was not a matter of record or necessarily known to any person present, it was his duty to make it known. Dr. Carpenter, a witness introduced by the plaintiff, testified that he bought the property at the sale; that Mr. Anderson made a statement at the sale in relation to the deed of trust to Moore and the interest notes, but did not speak of having any of the notes in his possession. He further stated, on cross-examination, that the unpaid interest notes were said to be in Christy's hands, and that plaintiff referred him to Christy for the amount due; and though in his re-examination by the plaintiff he broke somewhat the force of this statement by the qualification that upon reflection he was not certain " whether Anderson said where the notes were," it does not seem that Mr. Anderson advised any person at the sale of the existence of the seven notes, or that he had any interest in the first encumbrance. It is true that Michael was not at the sale, but Dr. Carpenter states that Anderson requested him to surrrender his bid to Michael, and that, in consideration of five hundred dollars paid to him by Anderson, and the agreement of Michael to indemnify him against a security debt of one thousand dollars, he substituted Michael in his place. The plaintiff now asserts that he had in his possession, at the time of the sale under the second deed, seven of the notes secured by the first, and seeks to have the property purchased at his own sale subjected to the payment of these notes. The evidence shows that Michael had every reason to believe that the seven notes had been paid; and the question now is, shall the plaintiff lose his lien, or shall Michael's property, purchased without notice of the lien, be subjected to it? If the plaintiff had used proper diligence at or before the sale in making known his silent claim, the purchaser would have bought with his eyes open and the property would have remained charged with the lien; but his negligence misled others, and his equity must yield to the better right of the innocent purchaser. It is said that the first encumbrance was duly recorded, and that all persons

were bound to take notice of it.   This is true ; but of what was the registry notice ?   The defendants were presumed to know that there was a prior encumbrance ; but, as the mortgagee himself said that the seven notes in question were paid, and the plaintiff at his sale, under the second deed, did not disclose his interest, though the notes were in his possession, the defendants reasonably inferred that they had been paid as they matured.   The plaintiff conducted the sale ; the amount due on the first encumbrance was the subject of conversation ; and he could not have forgotten his own debt, if he intended to assert it against the property ; and a word from him in season would have avoided this whole controversy.

All the judges concurring, the judgment will be reversed.