JOHN C. POTTER, Respondent, *v.* ANDREW J. L. STEVENS, Appellant.

1. *Fraudulent Conveyances— Purchasers—Grantee.*—A party accepting a conveyance of land made in fraud of creditors, for the purpose of assisting the debtor in his fraudulent acts, although he pay full value for the property, will be treated as a partaker in the fraud, and the conveyance will be held to be fraudulent and void.—Potter v. McDowell, 31 Mo. 62.

2. *Fraudulent Conveyances — Purchaser without Notice — Mortgagee — Assignment of Debts.*—A mortgage is in equity considered as a security for the debt, and a transfer or assignment of the debt, or any part thereof, transfers the mortgage *pro tanto.* A mortgagee is a purchaser under the act relating to fraudulent conveyances.

3. *Practice— Parties.* — A judgment was rendered against a defendant as a fraudulent grantee avoiding a deed made to defraud the creditors of the grantor, without making the holders of the notes secured by the grantee's mortgage or deed of trust parties to the suit. *Held,* that as the holders of the notes were not made parties, their interest could not be affected by the decree, and that, under the circumstances, the point not having been raised in the lower court, the court would not reverse the decree setting aside the fraudulent conveyance.

*Appeal from St. Louis Circuit Court.*

*Cline & Jamison,* for appellant.

I. Though the deed in controversy from McDowell to Stevens may have been fraudulent in fact as to both those parties, yet if these note holders stand in the position of subsequent purchasers in good faith without any notice that such original conveyance was fraudulent, they take a good title to the extent of their interest to the property, and are unaffected by the nature of the original deed as regards both the grantor and grantee—R. C. 1855, p. 803, § 3.

There is no intimation in the case that these note holders had any knowledge or notice that the conveyance from McDowell to Stevens was fraudulent, or that they knew that the deed of trust from Stevens to McDowell to secure payment of the notes was fraudulent; so that, if they are to be regarded as purchasers in the sense of the statute and of the above cases, they are also innocent purchasers.

II. The transfer of the notes to the present holders made

them such purchasers.—Anderson v. Baumgartner, 27 Mo. 80; Thayer v. Campbell, 9 Mo. 277; Keyes v. Wood, 21 Vt. 331; 1 Hill. Mortg., ch. 11, § 10.

The fact that some of these holders took their notes as collateral security for antecedent debts does not affect their rights; they are, having taken the same before maturity and without any notice of any infirmities attached to them, under the decisions of this State and of almost every State in the Union, regarded as good faith holders for value—Grant v. Kidwell, 30 Mo. 455; Swift v. Tyson, 16 Pet. 19, 20, 22; Blanchard v. Stevens, 3 Cush. 168; 26 Vt. 568; 1 Zab. (N. J.) 667; 11 Ohio, 191–2; 1 Smith, (Ind.) 89; 8 Cal. 266; Sto. on Bills, § 192.

The case then stands as though this property had been carved up into five different mortgages for the benefit of the creditors, being the five note holders in question, four of whom still remain unpaid; that is, as to them the mortgage is still outstanding. And it can make no difference whether these note holders be regarded as deriving their title as mortgages immediately from Stevens, or from Stevens through the intervention of McDowell as payee and endorser of the notes. A party can as well take a good title from a fraudulent grantor as from a fraudulent grantee, provided he be himself an innocent purchaser for value—Wheaton v. Sexton, 4 Whea. 507; Pope v. Andrews, 1 Sm. & M. 135; Storer v. Hemington, 7 Ala.

And it is well settled that a mortgagee is a purchaser to the extent of his interest in the premises within the meaning of the term "purchaser" as used in the statute of fraudulent conveyances—Ledyard v. Butler, 9 Pai. Ch. 137, and numerous cases there cited.

III. These note holders should have been made parties to the suit before the court could proceed to set aside the deed in controversy.—Sto. Eq. Pl. § 75.

And in numerous cases it is declared to be incumbent on the court, when a decree will have the effect of depriving third parties of their legal rights, to notice the fact at the

hearing and cause them to be brought in, and that the court ought to order the cause to stand over to make the plaintiff bring such necessary parties before the court; and that it is an error that will be fatal, though the objection may not have been made at any time before the hearing in the appellate court.—Shaver v. Brainard, 29 Barb. 25; O'Brien v. Heeny, 2 Edw. Ch. 242; Morse v. Water-power Co., 42 Me. 119; Felch v. Hooper, 20 Me. 159; Clark v. Long, 4 Rand. 451; Woodward v. Wood, 19 Ala. 213; Prentice v. Kimball, 19 Ills. 320.

*Knox & Smith*, for respondent.

FAGG, Judge, delivered the opinion of the court.

This was a proceeding instituted in the St. Louis Circuit Court for the purpose of declaring null and void a deed to certain property in the city of St. Louis, familiarly known in this case as "the St. Ange property." The deed was executed on the 31st of March, 1858, by John McDowell and wife, conveying said property to the appellant Stevens for the consideration of $25,000, and for which five several notes were executed at the time and delivered. The notes were due and payable respectively in one, two, three, four and five years. The plaintiff Potter asked to have this conveyance declared null and void, and for a decree divesting the title to the premises in question out of said Stevens and vesting the same in him.

The firm of Potter, Nute, White & Bagly, of which this plaintiff was a member, instituted a suit by attachment against the said McDowell on the 7th day of April, 1858, upon the ground that this conveyance had been fraudulently made so as to hinder and delay his creditors. That case was before this court by appeal, and may be found reported in 31 Mo. 62. The court at that time virtually disposed of all the questions growing out of this transfer to Stevens, and the judgment was reversed and the cause remanded. The plaintiffs prosecuted their suit to final judgment, and at the

sheriff's sale under execution in their favor this plaintiff became the purchaser of the property in question.

At the trial below, it was shown that the five notes before mentioned had been transferred before maturity to different parties; that one of them was assigned by McDowell to one Andrew Christy in the month of April, 1858, and had since been paid off and discharged by Stevens; the remaining four notes had been placed in the hands of other parties by the assignment of McDowell, to be held as collateral security for amounts alleged to be due and owing to them by him. One of these notes, payable four years after date, was held by the administrator of the estate of W. H. Dorsett, deceased, but the time of its assignment is not shown; another, payable two years after date, was held by Rich'd H. Stevens, brother of the appellant in this case, and is said to have been transferred in 1858, but the precise time is not shown; the others, payable in three and five years, were transferred in the months of February and March, respectively, in the year 1861, nearly three years after the commencement of the attachment suit.

The determination of all the questions in this case as between Potter and Stevens in the court below, we consider fully warranted by the opinion of this court in the case of Potter et al. v. McDowell, 31 Mo. 62, and the evidence introduced on the trial. The books furnish no clearer case of fraud in the conveyance of property than the one at bar, and we may now as well as at any other point dispose of the appeal which has been urged in behalf of Stevens upon the ground that he has actually paid off a portion of these notes. We cannot see how this fact would entitle him to any equitable consideration here. Even if he had paid in money to McDowell the full consideration of the property, yet if he was thereby aiding and assisting McDowell to carry out a fraudulent design as to his creditors, Stevens would be held to be a participator in the fraud and could reap no benefit from the purchase. The deed would be treated as null and void, and he must abide the consequences even though they should extend to the loss of all he had paid. So here hav-

ing by his act assisted McDowell to make a conveyance found to be fraudulent and void, even though he has paid a part of the consideration named in the deed to a holder of the note unaffected by any notice of the fraud, it is one of the consequences growing out of his own fraudulent act, and gives him no standing whatever in a court of equity.

The principal ground, however, which seems to be relied on for a reversal of the judgment in this case, is the alleged want of the parties necessary to a full and complete determination of the cause. This point seems to be raised here for the first time in the progress of the cause. There was no demurrer to the bill, no objection at the trial, and no suggestion by the court as to the want of parties. There is no doubt as to the fact that the failure to bring in the proper parties so that a full determination of the whole case can be had, is a defect that may be cured at any time before making the decree. The authorities are equally clear to the point that want of necessary parties is a good ground for the reversal of the judgment on appeal—Sto. Eq. Pl. § 75 ; Clark v. Long, 4 Rand. 451 ; Woodward v. Wood, 19 Ala. 213 ; Felch v. Hooper, 20 Me. 159 ; Morse et al. v. Machias Water-power & Mill Co., 42 Me. 119. Many other authorities might be cited if necessary.

After all, these authorities do not precisely meet the difficulty in the case. It may be admitted for all the purposes of this case, that the holders of these outstanding notes are fully entitled to all the benefit to be derived from the deed of trust executed by Stevens to McDowell to secure their payment ; that they occupy the position of purchasers in good faith and without notice of the fraud as between McDowell and Stevens, notwithstanding the fact the notes in question are only held as collateral security for debts due by McDowell to the several holders. It is a well recognized principle of law that the transfer of a debt secured by mortgage carries the security with it as an incident to the debt, and this is true whether the transfer is intended to be abso-

lute or otherwise—Taylor v. Campbell, 9 Mo. 277; Keyes v. Wood, 21 Mo. 331; Anderson v. Baumgartner, 27 Mo. 80.

It may be further admitted that they were within the jurisdiction of the court, and not embraced within any of the exceptional cases in which it is usually held, that, on account of interest in the subject matter of the suit, or to avoid further litigation, the court might nevertheless proceed to make a final decree. The question still recurs, were they necessary parties within the requirement of our own statutes, or the rules which prevail uniformly in chancery practice? Is their interest in the controversy between Potter and Stevens of such a character as to be affected by the decree asked for, or necessary to a full and complete determination of the whole case? It is very clear that they could not be bound by any judgment or decree in a proceeding to which they were not made parties. Their rights could not be concluded in this way, and therefore the necessity for making them parties to the suit must rest upon the consideration of preventing further litigation.

But we cannot say in this case, when the reversal of the judgment is made to depend alone upon the fact that these persons were not made parties simply because they might have been, that it is such an error as will require it to be sent back for further trial. Assuming that they are innocent holders and unaffected by notice of fraud, still *they* can only look to this property as a mere security for their several debts. There is no pretence that their interest in it amounts to anything more than this.

The plaintiff in this case, if he preferred to do so, might pay off these debts and relieve the property from the encumbrance. These parties may not be compelled to resort to this security for their protection. From all that appears in the testimony, Stevens is amply good for the amount of the notes, and it seems that suit has already been instituted against him on one of them. So that we are not warranted in concluding that the necessary office of decreeing

the deed to be void as to plaintiffs could operate to the preju-
dice of these parties, more especially as these were shown to
have been witnesses in the cause.  We must infer that they
had some knowledge of what the plaintiff was seeking to ac-
complish by his action against Stevens.  It was not pretended
by them, or any person for them, that they relied upon this
security for protection ; and we do not feel authorized, upon
the bare presumption that these parties may have an interest
directly to be affected by this proceeding, to reverse the judg-
ment and remand the cause for further trial.

No specific rule of practice can be laid down in cases like
the present.  The necessity of adding other parties where
their interests would seem to require it, or for the purpose
of preventing a multiplication of suits, must depend, at last,
upon the facts and circumstances of each particular case.

All of the other questions in the case were correctly set-
tled, and the judgment must be affirmed.  The other judges
concur.