## HOOD *vs.* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

Courts of equity have no controlling, or superintending, power over courts of law, and will neither arrest, nor interfere with, their proceedings, on the ground that their decisions were erroneous ; much less stay, or interfere with them, in anticipation of such erroneous decisions.

Nor will they exercise that branch of their jurisdiction, which consists in the staying of legal proceedings, such as the prosecution of inequitable, and unconscientious claims, or the setting up of defences of the like character, except in cases where the applicant for such relief would otherwise be remediless, and therefore will not interfere when the court of law, in which such proceedings are pending, can furnish adequate protection, or relief.

Where, on a motion by the defendants, for a new trial, in an action at law upon a special contract, the supreme court of errors decided that the superior court had erred in instructing the jury, that the defendants were estopped, by the facts proved by the plaintiff, from alleging that they had no power to make the contract declared on, and advised said superior court that a new trial should be granted in said action, and the plaintiff brought his bill in equity, to restrain the defendants from further prosecuting said motion for a new trial, on the ground that the defendants, by their representations, had induced the plaintiff to enter into said contract, and alter his condition in consequence of them, and, therefore, that said defense was inequitable and unconscientious in its character; it was held, 1. That the question whether, upon the facts proved on the trial of said action at law, it was, or was not, competent for the defendants, and consequently would not be, on another trial, to set up that defence, was not involved in such bill. 2. That the defendants would not be estopped in equity, any more than at law, from setting up the defence apprehended by the plaintiff. 3. That, inasmuch as the plaintiff could have adequate protection, at law, on such new trial, if he was entitled to it anywhere, there was no occasion for him to come into a court of equity for that purpose, and consequently such bill was insufficient.

AT the term of the superior court, for the county of New Haven, holden in October, 1853, Roswell Hood, the plaintiff, brought against the New York & New Haven Railroad Company, his bill in equity, which was substantially as follows:

" The defendants, a corporation, transacting business in this state, and having an office in the town of Bridgeport, and a public depot at New Haven, for the reception of pas-

sengers, to be carried by them, and for the sale of tickets therefor, were, and for a period of more than six months had been, engaged in the business of carrying passengers for hire, by means of railroad cars and stages, from New Haven to the village of Collinsville, in the town of Canton, in Hartford county, namely, by means of railroad cars to the town of Farmington, and by means of stages from said town of Farmington to Collinsville; and during that entire period had publicly represented and held said company out to the community, and knowingly permitted their agents, for the transaction of their business at their said public depot, to represent and hold said company out to the community, as being lawfully engaged in the business of carrying passengers for hire, in manner aforesaid, from New Haven to Collinsville, at a regular and established rate of fare therefor, which, during all said period, said company were accustomed to receive, from day to day, as the consideration of their engagements for the carriage, in manner aforesaid, of passengers paying the same, and for the use of due and proper care in that behalf, and on such receipt, to hold themselves out to the public as competent to contract for, and fulfil the same.

The plaintiff, having occasion to go on business from New Haven to Collinsville, and having knowledge of the representations and course of business of said company, and of their agents employed therein, and fully confiding in the truth of such representations, and in the lawfulness of the business in which the defendants were engaged, and from which they were deriving large profits, and in their competency to contract for and fulfil the same, and being wholly ignorant of the corporate powers of the defendants, otherwise than from their representations, and course of business, for a long time publicly held out and pursued as aforesaid, with the knowledge and to the great profit of the stockholders of said company, and without any attempt on their part, or on the part of any of them, to restrain said company, or the officers or agents thereof, from further pursuing the same, was thereby induced to pay, and did pay, to the defendants,

at their public depot in New Haven, on the day and year last aforesaid, the customary fare, then and there demanded by them for his carriage, in manner aforesaid, with due and proper care from New Haven to Collinsville, and which he would not have done, had he not known and confided in such representations, and thereby, and by the long continued usage of the defendants, and of their agents, at their public depot aforesaid, been induced to believe the same to be true.

Although the defendants then and there received him as a passenger, to be carried and conveyed by them, in manner aforesaid, from New Haven to Collinsville, with due and proper care, and received and appropriated to the use of said company and the stockholders thereof, and yet retain, the money paid to them by the plaintiff therefor, as aforesaid, yet the defendants, unmindful of their undertaking aforesaid, and wholly disregarding the same, did not use due and proper care in, and about, safely and securely conveying, or causing to be conveyed, the plaintiff from New Haven to Collinsville, but afterward, namely, on the day and year last aforesaid, while the plaintiff was so a passenger to be carried, and conveyed by the defendants, over, along and upon said route or journey, and before he had arrived at the terminus thereof, in said village of Collinsville, and while he was being carried, and conveyed by the defendants, over and upon said route, namely, at Farmington aforesaid, the defendants negligently, carelessly and unskilfully caused the plaintiff to be placed in a certain sleigh, or carriage upon runners, for the purpose of carrying and conveying the plaintiff, along, over and upon the remaining part of said route from New Haven to Collinsville, from said town of Farmington to said village of Collinsville, and afterward, on the day and year last aforesaid, and while the plaintiff was being carried and conveyed by the defendants along, over and upon said portion of said route or journey, and before arriving at the terminus thereof, at Collinsville, the defendants, not regarding their duty in that behalf, conducted

themselves so carelessly, negligently and unskilfully in this behalf, that, by and through the carelessness, negligence and unskilfulness of the defendants, and their servants and agents, and for want of due care and attention to their duty in this behalf, the said sleigh, or carriage on runners, was, on the day and year aforesaid, overset and thrown upon its side, at said town of Farmington, by means whereof the plaintiff, then being in said sleigh, or carriage on runners, was severely and very dangerously wounded, bruised and injured, and one of the legs of the plaintiff became, and was greatly and violently, crushed, and the bones thereof fractured and broken in divers places, and its arteries ruptured; and the plaintiff was otherwise greatly bruised, wounded and injured, and by means of the premises became and was sick, sore, lame and disordered, and so remained and continued for a long space of time, during all which time the plaintiff suffered and underwent great pain, and was hindered and prevented from transacting and attending to his necessary and lawful affairs, and lost, and was deprived of, divers great gains, profits and advantages which he might, and otherwise would, have derived and acquired; and whereby, also, the plaintiff was forced and obliged to expend large sums of money, namely, three hundred dollars, in and about endeavoring to be cured of said injuries to his person, and was hindered and prevented from returning home to New Haven, and was kept and detained for a long space of time at great expense, namely, two hundred dollars, at an inn in Collinsville; all which was to his damage, in at least the sum of ten thousand dollars.

The plaintiff, for the recovery thereof and his just costs, brought his action of *assumpsit* against the defendants, alleging said contract, and the breach thereof, and injury to him thereby, to the superior court for New Haven county, holden on the second Tuesday of October, 1850, demanding ten thousand dollars damages and his costs.

The defendants, having duly appeared to answer to said

suit, pleaded the general issue thereto, and thereupon such proceedings were had, that said cause came, by continuance, to the term of said court, holden at New Haven, on the fourth Tuesday of January, 1853, when said parties were at issue, to the jury, on the defendants' plea aforesaid; and said cause came to trial, and after a full hearing of the parties and their evidence, was committed to the jury, who rendered their verdict, "finding for the plaintiff the sum of six thousand dollars damages and his costs," which verdict was accepted by the court; and it was thereupon considered, and adjudged by the court, that the plaintiff recover said amount of the defendants.

After the rendering of said verdict and judgment thereon, the defendants filed their motion in said court for a new trial, on the ground that the court erred in omitting to charge the jury as requested by the defendants; that the defendants had not, under their charter, which, though a private act, was in evidence before the jury, power to enter into any such contract as that alleged in the declaration, even though they should find, upon the evidence introduced by the plaintiff, that the defendants had, for a long time prior to the making thereof, held themselves out to the public, by their general agents at their depot, as vested with powers requisite to enter into and fulfil such contracts, and during that entire period had knowingly permitted their agents to represent and hold the defendants out, as vested with the aforesaid powers, and that the plaintiff, knowing such representations, and believing them to be true, and being ignorant of the corporate powers of the defendants, was thereby induced to enter into said contract, and pay the defendants therefor, the consideration demanded by them, which he would not have done, had he not known such representations and believed them to be true. And also that the court erred in charging the jury, as was claimed by the plaintiff, that if the jury should find the facts as claimed by him, upon the evidence introduced as aforesaid, and more particularly stated in the motion on file,

that the defendants were estopped from denying the obligation of said contract, although the court did inform them that the defendants, under their charter, had not power to enter into such contract.

The question of law, arising on said motion, was reserved for the consideration and advice of the supreme court of errors, with stay of execution on the judgment recovered, and the same was argued before said court at the last term thereof, and inasmuch as it appeared by the motion allowed, that the charter of said corporation was in evidence on the trial of said cause, whereby it appeared to the court, and was so decided, that the defendants had not, under their charter, the power to enter into any such contract as was alleged by the plaintiff, the supreme court of errors were of opinion, and so advised said superior court, that the defendants were not by the rules of law, as administered in a court of law, estopped to rely on such want of power, so made apparent by the evidence introduced and received on the trial of said cause, in manner and form as stated in said motion, notwithstanding the plaintiff, at the time of said contract, had no knowledge of the provision of said charter, and had been induced, in manner aforesaid, by the defendants, to believe that they had the power they held themselves out as possessing, and thereupon the supreme court of errors advised this court to grant a new trial of said case.

The defendants, at the time of making said contract, and of their reception of the money of the plaintiff as the consideration thereof, and during all the time that they so publicly represented and held themselves out to the community, and knowingly permitted their agents at their public depot, to represent and hold said company out to the community, as being lawfully engaged in the business of carrying passengers for hire, in manner aforesaid, from New Haven to Collinsville, well knew, that by their charter, which was a private charter, no such power was conferred, but carefully concealed

the same, and all knowledge thereof, from the public and from the plaintiff, whom they well knew to be ignorant of the same, thereby deceiving the public and the plaintiff in reference thereto, by means whereof the plaintiff was induced to pay to the defendants his money, in consideration of their contract to carry him, in manner aforesaid, from New Haven to Collinsville, which he would not otherwise have done; they then and there, unfairly and inequitably, intending to avoid all responsibility for damages to the plaintiff by reason of any violation, or non-fulfilment, of said contract, that might happen by the negligence, or default, of said company, or their agents, to his injury, by availing themselves, in their defence, of their want of power, under their charter, to make such contract, so known by them and concealed as aforesaid.

Although, by the strict rules of law, the defendants were not estopped to rely, in their defence, on the trial of said case, or their want of power apparent from the provisions of their charter, so introduced in evidence, yet it is manifestly against equity and good conscience, that they should be permitted, after inducing the plaintiff to part with his money, on the faith of said contract, and of the ability of the defendants to enter into the same, in manner aforesaid, to avail themselves of such defence, and thereby render this court an instrument of injustice and fraud.

Inasmuch, therefore, as the defendants, in pursuance of this motion, are now intending, contrary to equity and good conscience, to move said court, sitting as a court of law, to grant them a new trial in said case, for the sole and only purpose of enabling them to set up and rely, in their defence to the action at law, on their want of power to make said contract, thereby contriving and intending unfairly and unjustly to deprive the plaintiff of all remedy for their violation thereof, to his great injury, and will, it is greatly to be feared, succeed in so doing, unless said court, in the exercise of its equitable powers, will interfere to pre-

vent the same, the plaintiff prayed the court, on finding the allegations aforesaid to be true, to order and decree, that the defendants, and their agents and attornies, be forever enjoined, under such pains and penalties as said court shall deem fit to prescribe, not to pursue or further prosecute, in said superior court, where the same is now pending, their motion for a new trial in said case, or to avail themselves, in any way, of their unconscientious defence aforesaid, but that they do, henceforth, wholly desist therefrom, and suffer the judgment recovered against them by the plaintiff, to remain for execution; and in the meantime, until the final hearing and determination hereof, that said court will cause all further proceedings on said motion to be stayed, or in some other way, grant proper relief."

To this bill, the defendants demurred generally, and the case was thereupon reserved for the advice of this court.

*Dutton* and *Munson*, in support of the demurrer.

1. The supreme court of errors have decided that the defendants had no power to make the contract declared on, and that they were not estopped, at law, from taking advantage of their inability. *Hood* v. *New York & New Haven Railroad Company*, 22 Conn. R., 1, and 505. 16 Eng. L. & E., 180. 14 Eng. L. & E., 57. 21 Eng. L. & E., 319.

2. Every objection, which would lie against a legal estoppel, will lie against an equitable estoppel. It is admitted, that the defendants had no legal power to make the contract referred to. But if they can be enjoined against taking advantage of an inability, they have power to bind themselves. If an infant can be enjoined against pleading infancy, he can bind himself as a servant, by pretending to be of full age. This would be reviving the principle of the absurd doctrine, that a man can not stultify himself.

3. The allegations in the bill, would, if established, make out a case at law against those, who are chargeable with the

acts charged, and therefore the plaintiff has a sufficient remedy at law.

4. No authority can be shown, where a court, either of law or equity, have held a defendant responsible for an act, which he was incapable of performing. A married woman, though liable to an action on the case for fraudulent representations, can always plead coverture to an action *ex contractu.*

5. To allow either a legal, or equitable estoppel, to prevent a corporation from pleading incapacity, would defeat the intention of the legislature, in restricting it to a certain kind of business. By a little management, a bank could engage in trade; an insurance company in land speculation, &c., and all restrictions upon them would be inoperative.

*Baldwin,* and *R. I. & C. R. Ingersoll,* and *J. S. Beach,* against the demurrer.

The bill alleges it to be against good conscience, that the defendants should have a new trial, for no other purpose than to avail themselves of an equitable defence, and thus, through the instrumentality of the court, perfect a contemplated fraud.

The demurrer of the defendants plainly raises the question, whether this intended wrong can be restrained by a court of equity.

First. It must be conceded that an individual, who had so conducted, would not be permitted to avail himself of such a defence. *Bushnell* v. *Church,* 15 Conn. R., 419. *Brown* v. *Wheeler,* 17 Conn. R., 353. *Roe* v. *Jerome,* 18 Conn. R., 153. *East Haddam Bank* v. *Shailer,* 20 Conn. R., 22.

Secondly. It is said, however, that as the defendants had no power, under their charter, to make the contract, they can not be estopped. This claim of the defendants assumes, that "the question of estoppel," as applied to them, "is a question of power under their charter." I. But the powers of the defendants, under their charter, to make a valid contract, which can be enforced as such, and their right to avail

themselves of that want of power in their defence, are two distinct questions. The first question, whether they have the requisite power, may be answered by an inspection of their charter. The second question, whether they have so conducted, in inducing the plaintiff to believe that they had the requisite power, as that they are now estopped to deny it, depends—1st. Upon the evidence of their acts, as proved in court. 2dly. Upon the question, whether a corporation can so act as to deprive itself of an otherwise valid defence, when the acts on which the plaintiff relies, as an estoppel, are not authorized by its chartered powers. II. It is conceded that the evidence affords a conclusive estoppel, if the defendants can be affected by it.

III. A corporation can not so act, as to deprive itself of an otherwise valid defence, when the acts, upon which an estoppel is based, are not authorized by its chartered powers.

This question has been already settled by the highest judicial authorities of this state, as well as the neighboring states. In the leading case of *Buckley* v. *The Derby Fishing Company*, 2 Conn. R., 255, it was decided, nearly forty years ago, by the supreme court of errors, that the defendant, a corporation, was estopped from setting up a violation of its own private charter, to avoid the contracts entered into by its known agents, and which the corporation by long usage had sanctioned. The same doctrine is freely recognized, in the recent case of *Fuller et al.* v. *The Naugatuck Railroad Company*, 21 Conn. R., 570. *Weed* v. *The Saratoga Railroad Company*, 19 Wend., 354. *Moss* v. *Roper Lead Mining Company*, 8 Hill, 137. *Alleghany City* v. *McClarkson*, 2 Harris, 83. 1 Sw. Dig., 75. *Dispatch Line of Packets* v. *Bellamy Manufacturing Company*, 12 N. H. R., 205. *Stone* v. *Congregational Society*, 14 Verm. R., 86. *Wilson* v. *Bridge Company*, 2 Shep., 201. *Parker* v. *The Boston & Maine Railroad Company*, 3 Cush., 117.

The injustice and iniquity of this defence can not be bet-

ter characterized than in the language of the Lord Chancellor, in the recent case of *Hawkes* v. *The Eastern Counties Railway Company*, 15 L. & Eq., 358. *Chestnut Hill Turnpike Company* v. *Rutter*, 4 S. & R., 6. *Bank of United States* v. *Dandridge*, 12 Wheat., 64. *Riddle* v. *Proprietors Canal Lock Company*, 7 Mass. R., 188. *Union Manufacturing Company* v. *Pitkin*, 14 Conn. R., 174.

Thirdly. The power of a corporation to do wrong is intrinsic to its existence, though extrinsic of its charter. 1st. That they may be guilty of trover, or trespass, or disseisin, and many other wrongs, for which they may be made liable to the injured party, is familiar law. 22 Conn. R., 538, and cases there cited. And the question, whether they have committed the wrong, is not one to be tested by the power of the company, under its charter, but by the evidence, produced in court, as in other controversies.

Fourthly. The estoppel is not bound, by any ties of affinity, to the form of action, the plea to which it seeks to override; but it is the moral offspring of the law, and has a right to be heard in all cases, "where one, by his words or conduct, has caused another to believe in the existence of a given state of things, to conclude him from averring a different state of things as existing at the time."

"It is a rule of law, founded upon the soundest principles of morality," and is equally effectual whether applied to an action on a guaranty, as in *Bushnell* v. *Church*, to an action of trespass upon real estate, as in *Brown* v. *Wheeler*, to an action on a bill of exchange, as in *Roe* v. *Jerome*, to an action of general *assumpsit*, as in *East Haddam Bank* v. *Shailer*, or to an action of trespass *de bonis asportatis*, as in *Dyer* v. *Cady*, 20 Conn. R., 565.

Fifthly. The allegations in the bill extricate this case from the former decision. We are now before a court of equity, and it is admitted that the defendants knew they were perpetrating a fraud upon the plaintiff, and did it with the intention, at the time, of availing themselves of that fraud in

their defence.  1st.  The elementary principles, which govern courts of equity, in restraining the interposition of inequitable defences, apply with peculiar force to these defendants. Eden on Injunctions, pp. 15.  Jeremy Eq. Ju., 338.  2 Sto. Eq. Ju., § 875.  2d.  A court of equity will not permit a defendant to avail himself of a public statute, enacted from motives of public policy, as a protection against the consequences of his own fraud.  *Phalen* v. *Clark*, 19 Conn. R., 421.  Much less will it allow these defendants to oust the court of its jurisdiction, by pleading their own private charter as a license for their fraud.

STORRS, J.  This is a bill in equity, brought to the superior court, and the question of its sufficiency is referred to this court, for its advice.

When the questions, arising on the motion of the defendants for a new trial, in the action at law pending between these parties, were referred to us, we were of opinion, that the superior court erred in the trial of the case, in instructing the jury, that the defendants were estopped, by the facts proved by the plaintiff, from alleging that they had no power to make the contract, declared on, in that suit, and we therefore advised that a new trial should be granted.  Those facts, and the reasons for that opinion, are fully stated in the report of that case, in 22 Conn. R., 505.  As that court uniformly regards the opinions and advice of this court, as being virtually authoritative, it will of course grant such new trial, unless our opinion in the present case should render it unnecessary.  The object of this bill is, to restrain the defendants from further prosecuting their motion for a new trial in that case, and thus to prevent them from availing themselves of the defence, that they had no power to make the contract on which it was brought.

The council for the plaintiff, in their argument before us, in support of this bill, have insisted that, on the facts found to be proved on the trial of that action, it was not competent

for the defendants, and consequently would not be on another trial, to set up that defence; and this point has been discussed by them most elaborately, both on principle and authority. And this is claimed as a legal principle, as contradistinguished from a merely equitable one. This is, plainly, the precise question upon which, on the motion for a new trial, we expressed the opinion, in favor of the competency of the defendants to set up that defence, and advised a new trial of that case. In our opinion, that question is not involved in the present bill, and therefore is not now referred to us by the superior court, for our advice; and, for the most obvious reasons of duty and propriety, it is not the course of this court to give our advice to that court, on questions not referred to us for that purpose. We do not, therefore, feel called on to express any opinion upon it, and it would, in our judgment, be irregular, if not improper, for us to do so. A slight examination, of this bill, will show that this question does not properly arise upon it. It is not founded on the claim that, in the action at law, the defendants can not legally set up the defence which has been mentioned. Nor is there an intimation in it, that it would not be in accordance with legal principles, for the superior court to allow that defence to the defendants, as it is properly assumed in the bill, that it will, agreeably to the advice of this court, on a re-trial of that case. On the contrary, the bill admits, that at law, the defendants are not estopped to rely on that defence, on such re-trial; and the only ground on which it invokes the interposition of the superior court, as a court of equity, is, that it would be against equity, and good conscience, to permit the defendants to do so. The ground for relief, stated in the bill, manifestly is not that the principles of law, adopted by the superior court in the action at law, as applicable to that defence, are erroneous, but that, being correct, and the defendants being at law entitled to make that defence, it is so inequitable, and unconscientious, in its character, that they ought to be restrained, on equitable princi-

ples, from availing themselves of it in that suit. And it is because such defence is admissible on purely legal principles, that the plaintiff has deemed it necessary to resort to the preventive aid of a court of equity. This bill, therefore, does not raise, or allow of, the question which has thus been brought before us; and as it would not be a proper topic of argument before the superior court, it is not a legitimate one before us: for, in considering this bill, we are confined to the questions which it presents to that court. If the bill had stated, as a ground for the relief sought, that the defence, which the plaintiff apprehends that the defendant will set up in the action at law, is not allowable on legal principles, it is clear that it would not have presented any case for the interposition of a court of equity; because, in the first place, there would manifestly be adequate remedy at law, on an objection to such defence, in the court before which the action would be again tried; and, in the next place, as it would not be within the jurisdiction of a court of equity to arrest, or interfere with, the proceedings of a court of law, on the ground that its decisions were erroneous, much less would it be competent for it to stay, or interfere with them, in anticipation of such erroneous decisions. Courts of equity, as such, have no revising, controlling, or superintending power over the judgments, proceedings or decisions of courts of law, nor will they interfere with them, excepting on purely equitable grounds. *Mar. Ins. Co.* v. *Hogan,* 7 Cranch, 336. *Simpson* v. *Hart,* 1 Johns. C. A. R., 95. On this bill, it must therefore be assumed that the defendants have a legal right, in the action at law, to set up the defence against which they are here sought to be enjoined. With these views, we have refrained from re-examining the question as to the competency of that defence.

It has not been, and can not justly be, claimed by the plaintiff, that on the facts proved by him in that action, the defendants would be estopped in equity, any more than at law, from setting up the defence which the plaintiff appre-

hends.   If there be such an estoppel, it would be founded, not upon any peculiar or distinctive principle which prevails exclusively in courts of equity, but upon one which is as fully recognized, and acted on in courts of law, namely, that a person who, by his representations to another, has induced the latter to believe in the existence of a certain state of things, and to alter his condition in consequence of it, shall be precluded from alleging, to his injury, a different state of things as then existing; the reason of which rule, whenever it is held applicable, (which is not the case under all circumstances,) is, that it would be against equity and good conscience for the person, making such representations, to retract or gainsay them, to the injury of the other, and that to allow him to do so would enable him to practice a fraud, or what would be equivalent to it, on the person who was thus misled.   If, on this ground, the defendants, on the re-trial of the action at law, ought not to be allowed to set up the defence which they contemplate, they will be prevented from doing so. Since, then, the plaintiff can have adequate protection at law, against that defence on such re-trial, if he is entitled to it any where, there is no occasion for him to come into a court of equity for that purpose.   And it is well settled that courts of equity will not exercise that branch of their jurisdiction, which consists in the staying of legal proceedings, such as restraining the prosecution of inequitable and unconscientious claims, or the setting up of defences of the like character, excepting in cases where the applicant, for such relief, would be otherwise remediless; and therefore that they will not interfere, where the court of law, in which such proceedings are pending, can furnish adequate protection or relief. Sto. Eq. J., ch. 23.   *Bateman* v. *Willow*, 1 Sch. & Lef., 201. *Duncan* v. *Lyon*, 3 Johns. Ch. R., 351.   *Marquess of Breadalbane* v. *Marquess of Chandos*, 2 Mylne & Craig, 721, 733. This furnishes a decisive reason why this bill should not be entertained, for the purpose of preventing the defendants from setting up, in the action at law, the defence against which

they are sought to be enjoined, on the ground of its inequitable, and unconscionable character, which is the only ground of relief stated in the bill.

The bill, therefore, is insufficient.

In this opinion the other judges concurred.

Bill insufficient.