ARTHUR M. EASTMAN & UX. *v.* AMOSKEAG MANUFACTURING COM-
PANY.

A court of equity will not undertake to decide whether a nuisance exists, until the
plaintiff shall fully establish his rights at law.

The plaintiff's rights at law will not be considered as established, when he has obtained
a judgment, and the action where the same was recovered is still pending under the
writ of review.

An adverse, peaceable, uninterrupted enjoyment of a stream of water for the period of
twenty years, in a particular way, affords presumptive evidence of a grant.

To justify the interference of a court of equity for the issue of their writ of injunction,
the plaintiffs must show by their proof a case of strong and clear injustice, of press-
ing necessity, imminent danger, of great and irreparable damage, and not of that
nature, for which an action at law would furnish an adequate remedy.

The court of equity will not interfere unless they can stay a multiplicity of suits at
law. They must have an *undivided* jurisdiction over the whole litigation, and the
power to adjust the whole dispute.

*French* and *Cross*, for plaintiffs, contended :—

"Where the injury is *irreparable*, not susceptible of being adequate-
ly compensated by damages, or such as from its continuance or perma-
nent mischief, must occasion a constantly recurring grievance which can-
not be otherwise prevented ; as where loss of health, loss of trade or
business, destruction of the means of subsistence, or *permanent ruin
to property* may or will ensue from the wrongful acts ; in every such
case a court of equity will interfere by injunction," &c.   *Fowler, J.,*
in *Webber* v. *Gage,* 39 N. H. 186, and cases there cited.

We allege, and defendants by their demurrer admit, the absolute,
continuous and impending destruction of our trees, shrubs, bushes and
soil, and of our river barrier, valuable in themselves, and as part of our
homestead.   "That of which we have been deprived by these defend-
ants, might well possess a value to the complainants over and above all
pecuniary benefits to be derived from it ; at all events, it is our own,
and we are entitled to be protected in its enjoyment against the wrong-
ful act of these defendants."   *Fowler, J.,* 39 N. H. 188.

It is no answer to say that we have a right of action at law for dam-
ages, and no other remedy.   In the language of *Fowler, J.,* in the
case just cited, "It would be a deep and lasting reproach to the admin-
istration of justice if it were so."

The court of chancery has a concurrent jurisdiction by injunction,
equally clear and well established in the cases of *private nuisance;*"
Chancellor Kent, in *Gardner* v. *Newburgh,* 2 N. Y. Ch. Rep. 162 ; 2
Eden on Injunctions, 275 (3d Am. Ed.) *Ingraham* v. *Dunnell,* 5 Met.
118 ; 2 Story Eq. sec. 925 ; and of public nuisance, where the party
complaining sustains special damages.   2 Eden on Inj. p. 261, note 2 ;
*Frink & a.* v. *Lawrence,* 20 Conn. 117 ; *Bigelow* v. *Hartford Br.
Co.,* 14 Conn. 565 ; *O'Brien* v. *Norwich & Wor. R. R. Co.,* 17
Conn. 372 ; *Seely* v. *Bishop,* 19 Conn. 125 ; *City of Georgetown*
v. *Alexandria Canal Co.,* 12 Peters 98 ; *Corning* v. *Lowere,* 6

Johns Ch. R. 439; *Crowder* v. *Tinker*, 19 Vesey 616; 2 Story's Eq. sec. 927.

If the right be doubtful, the court will direct it to be tried at law, and when the right is fully established, a perpetual injunction will be decreed. 2 Éden 271-3, note and 274; *Ingraham* v. *Dunnell & a.*, 5 Met. 118.

And it is no objection to the granting of an injunction, that plaintiff has commenced an action at law. 2 Eden 276.

Most of the propositions in defendants' brief are unquestioned.

That parties injured as we are admitted to be, are bound to expend money to erect stone barriers against their land, or that the court can judicially take notice of the practicability of such a defence to the defendants' illegal act, we cannot admit.

*S. N. Bell*, for defendants, contended :—

The fact that there were absent parties, and so interested as to require them to be made parties, was fully set out in the answer, filed June Term, 1863, and the plaintiff should have amended his bill accordingly.

The proper time for taking this objection is upon opening the pleading and before the merits are discussed; and the ordinary course where a want of proper parties appears at the hearing is for the cause to stand over in order that they may be added. 1 Dan. Cn. Pr. 334-339; *Hersey* v. *Dole*, 24 Maine 20; Story Eq. Pl. sec. 75; *Hickock* v. *Scribner*, 3 John. Cases 331; *Shillaber* v. *Concord & Portsmouth R. R.*, Rockingham, Dec. Term, 1865.

The defendant may object for want of proper parties by his answer; if he does, the cause is heard on the objection—the plaintiff commencing—the court delivers its opinion on the cause as it stands, but the objection is not finally disposed of till the hearing. 1 Dan. Ch. Pr. 337. If the interest of the absent parties may be affected or be bound by the decree, they must be brought before the court or it will not proceed to a decree. Story's Eq. Pl. sec. 136, 137.

An interest in the subject *ex directo* which may be injuriously affected is not indispensable to the general rule, for if the defendants actually before the court may be subjected to undue inconvenience, or to danger of loss, or to future litigation, or to a liability more extensive or direct than if the absent parties were before the court, that will of itself be sufficient ground to enforce the rule of making the absent persons parties. Story's Eq. Pl. 139-154; *Bailey* v. *Inglee*, 2 Paige 278; 1 Dan. Ch. Pr. 315-329; *Greenwood* v. *Atkinson*, 5 Sim. 419; 2 Story's Eq. Jurisp. sec. 1526; Mitf. Ch. Pl. 190-398.

The bill may be dismissed if plaintiff when called upon refuses or unreasonably neglects to make proper parties. Mitf. Eq. Pl. 398; *Greenleaf* v. *Queen*, 1 Peters 149.

Here the parties above named are directly interested in the result of this suit; the effect of which if sustained will be to deprive them of the substantial value of the property derived from the defendants, and on

which they have expended nearly four millions of dollars. Straw's dep., page 123 of abstract. The almost necessary effect will be to subject the present defendants to undue inconvenience, danger of loss, and extensive future litigation, as well as to a greater liability than if they were made parties.

The improvements and expenditures made by these parties were made from ten to twenty-two years before the filing of the plaintiffs' bill—and their mills, buildings and works were constructed with the full knowledge of the plaintiff and of the parties from whom they derive their title. And with such knowledge, they have been in the quiet occupation ever since. Dep. of S. B. Kidder.

It would be unreasonable and inequitable to make a decree without giving to these parties an opportunity to be heard, and without giving an opportunity to the present defendants to be heard on the conflicting rights and interests that would arise if the other parties named had been made parties to the bill.

The original bill and answer, as well as the supplemental bill and answer, will show that the plaintiff has not submitted the whole subject matter to the equitable jurisdiction of the court. He is at the same time seeking to recover damages for an alleged nuisance by two different suits at law, and also by bill in equity. The claim for the assessment of damages is made in the plaintiffs' bill, and is insisted upon in their brief.

It is against the whole policy of courts of equity to encourage multiplicity of suits, and may be taken advantage of by plea. Story's Eq. Pl. sec. 746, and note.

The court will not permit a bill to be brought for part of a matter only, but to prevent the splitting of causes and consequent multiplicity of suits will allow a demurrer on this ground. Mit. Ch. Pl. 183. By the rules of this court the defendants may have the same advantage of this objection as if it had been taken by plea or demurrer.

Courts of equity will not permit a bill to be brought for part of the matter only where the whole is the subject matter of one suit. Story's Eq. Pl., sec. 287; Cooper's Eq. Pl., 184-5; *Purefoy* v. *Purefoy*, 1 Vern. 29; *Newland* v. *Rogers*, 3 Barb. Ch. 435; 1 Dan. Ch. Pr., 379, 618.

If the plaintiff pursue his remedy for the same cause at common law and in equity, on coming in of the answer, if the plaintiff elect to proceed at law the bill will be dismissed.

Where the remedies at law and in equity are inconsistent any decisive act of the party with knowledge of his rights and of the facts, determines his decision. *Sanger* v. *Wood*, 3 Johns. Ch. 416; Mit. Ch. Pl., 256, and notes; Story's Eq. Pl., sec. 742; 2 Daniel's Ch. Pr., 723, and note.

It would be utterly inconsistent with the ends of justice to permit a party to proceed in this court and at law at the same time, for the same demand, for the jury may find a verdict one way and the master make a report a different way, which would occasion such a clashing of jurisdiction as could not be endured. *Mocher* v. *Reed*, 1 Ball & Beat-

ty, 318; *Livingston* v. *Kane*, 3 Johns. Ch. 224; *Sanger* v. *Wood*, 4 Johns. Ch. 416; *Ex parte Ward*, 1 Atk. 153; *Ex parte Lewes*, 1 Atk. 154; *Ex parte Warder*, 3 Bro. 191; *Ex parte Cator*, 3 Bro. 216; *Sch.* v. *Lefor*, 441; 3 P. Wms., 294, note E, 1 Atk. 344; 1 Ball & Beatty, 340.

Here the actions are inconsistent because the action at law seeks compensation for damages, while the bill seeks an injunction on the ground that the damages are irreparable and cannot be compensated.

The plaintiff has pursued his remedy at law in one case and been non-suited; and in another to a verdict and judgment; and is still prosecuting another suit to obtain a verdict; while in equity, he claims that the damages are irreparable, and therefore the defendants should be enjoined.

The verdict and judgment show that for all the damages before the date of this writ he has been compensated, and if successful in the other suit still pending, he will be compensated by the damages recovered in that.

The plaintiff has made his election and given decisive evidence of it, by prosecuting his suit at law after the coming in of the answer, and his bill here should be dismissed.

The bill, supplemental bill, answers and evidence, show that the rights of the plaintiff were not at the filing of the bill, and are now not determined at law. The plaintiff brought his suit before the filing of the bill, which was not determined by trial, verdict or judgment until after his bill was filed, and the same suit is now pending on review. And until the trial of the action of review it can in no way be said the rights of the plaintiff to hold the land free from the interference of the defendant are determined, for although the jury have found a verdict on the first trial for the plaintiff, yet on the second they may find a verdict for the defendant, and it is the last which is the final verdict that settles the rights of the parties. *Burley* v. *Burley*, 6 N. H. 204; *Knox* v. *Knox*, 12 N. H. 352–357; *Avery* v. *Holmes*, 10 N. H. 574.

The rights of the parties being still unsettled the defendant may demur for want of equity, or may claim the same advantage by answer as if he had demurred. Angell on Water Courses, sec. 452; *Coe* v. *Winnipisseogee Man. Co.*, 37 N. H. 254; Waterman's Eden. on Inj., 270 and note; *Robeson* v. *Pettinger*, 1 Green. Ch. 57; *Olmstead & al.* v. *Loomis & al.*, 6 Barb. S. C. 152; *Ripon* v. *Hobart*, 3 Mylne and Keene, 169; *Dana* v. *Valentine*, 5 Met. 8; Anon. 1 Vern. 120; *East India Co.* v. *Sandys*, 1 Vernon 127; *Hill & al.* v. *Univ. of Oxford*, 1 Vern. 275; Mitf. Ch. Pl. 168–70; *Cummings* v. *Barrett*, 10 Cush. 186.

The court will not suspend the cause till trial at law. *Dana* v. *Valentine*, 5 Met. 8.

Where the works have been in use three years and upwards, that is considered such laches as to preclude the party from having relief in equity without first going to law. *Ibid; Walker* v. *Smeaton*, 1 Cox 102; *Reed* v. *Gifford*, 6 Johns. Ch. 19. Plaintiff has ample and adequate remedy at law.

The issuing of an injunction in such cases is not matter of right and as of course in all cases, but in the sound discretion of the court, and they will not exercise that discretion unless it is clearly made to appear that the injury to the plaintiff is of a character to require it, and that it cannot be compensated adequately in any other manner; and they will also examine to see what will be the effect on the other parties to the suit, and will examine all the circumstances of the case, and see, if an injunction were issued against the defendants, whether it would remedy the evil, or whether the evil would still go on under the operation of causes not controlled by the order of the court. If it appeared probable that the injunction would not remedy the evil, the court would not grant it. *Wood* v. *Sutcliffe*, 8 L. and Eq. 217; *Wason* v. *Sanborn*, Rock. Co., 1862.

The plaintiffs' original bill, and their supplemental bill, and the defendants' answers thereto, it is not deemed necessary to print, nor an abstract of the evidence in the case, for the reason that the questions settled can be made intelligible by reference to the decision of the court and the arguments of counsel.

NESMITH, J.   On or about the first day of April, A. D., 1861, the plaintiffs filed their original bill of complaint against the defendants, containing sundry allegations duly set forth in the same, and closing with a prayer for relief as therein stated. At the June Law Term in this district, the defendants appeared and filed a demurrer to said original bill, and contended that plaintiffs were not entitled upon said bill to the relief therein prayed for:

1.   Because the plaintiffs had a plain, full, ample and adequate remedy at law, and all the injuries complained of in said bill might be fully compensated thereby.

2.   Because the injuries complained of are neither imminent nor irreparable, nor is there any danger of their becoming so, either in their nature, or as matter of fact.

3.   Because the right of the plaintiffs to enjoy the land free from the molestation complained of had not been determined by any action, suit, or other proceeding at law.

In A. D. 1862, at the December Law Term in this district, this demurrer was overruled by the court, and the defendants obtained leave to withdraw their said demurrer, and file their answer to the bill. In the meantime plaintiffs had leave to file a supplemental bill, which was afterwards duly filed on the 27th of May, A. D., 1863. At the subsequent June Term, defendants furnished their answer to the original bill, as well as to the supplemental bill. This answer sets out the title and rights claimed by the party, and suggests that plaintiffs should join certain other interested persons as defendants, admits some of the facts as charged in plaintiffs' bills, and alleges many other facts and arguments as explanatory of their case, and, in general, negatives many of the charges in plaintiffs' bills. Plaintiffs' supplemental bill states, among other things, that since the filing of their original bill, the action

at law named therein, brought by the plaintiffs against the defendants, on the 21st day of October, 1859, for damages to plaintiffs' land before that time, by them sustained by reason of said dam and flashboards, then pending in the Supreme Judicial Court in this county, was heard and tried on the first Tuesday of January, A. D., 1862, and a verdict rendered for the plaintiffs for the sum of $206.08 damages. And at the Law Term of said court holden at Concord, on the first Tuesday of December of the same year, judgment was rendered upon said verdict and for costs taxed at $496.59, which said judgment is in full force; and plaintiffs further say that the defendants have continued, from the filing of said original bill, and up to the time of filing this supplemental bill, and still continue, to maintain said dam and the flashboards named in said original bill, and to maintain and keep the water upon the land of the plaintiffs at the full height at which it may be maintained and kept by the use thereof, in the same manner, that said dam and flashboards and water were maintained and kept up from the 3d day of July, A. D., 1856, to the 21st day of October, 1859, being the time described in the declaration in said action at law, in which said judgment was rendered, as herein before stated, and that they believe the defendants intend to continue to keep up their said dam and flashboards, at the full height, as heretofore. Plaintiffs allege that by the aforesaid trial, verdict, and judgment at law, their right to possess and enjoy their land free from any flowage, easement, or servitude whatever, by reason of any dam or flashboards, or other obstructions of said river by the defendants has been maintained. Wherefore, the plaintiffs pray, that the defendants, their agents, and officers, may be restrained by the writ of injunction of this court, from continuing, or maintaining upon said dam the said flashboards, and that it may be definitely ascertained, in such manner as said court shall order, how much of said dam is injurious to the plaintiffs, and that the defendants may then be ordered to remove such portion thereof as is adjudged to be injurious to the plaintiffs, and that the damages sustained by these plaintiffs, by reason of said flashboards and by such portion of said dam, as is so adjudged to be injurious to the plaintiffs, since the commencement of said last named action at law, by the plaintiffs against said defendants, may be ascertained, and decreed to be paid by the defendants to the plaintiffs, and that the defendants may be perpetually enjoined and restrained by a decree of this court from ever replacing or maintaining said flashboards on said dam, or from replacing, rebuilding, or maintaining such portion of said dam as may be so adjudged to be injurious to the plaintiffs, and for such other relief as may be just. Both parties, since the filing of the supplemental bill and answer aforesaid, have proceeded to take and prepare a large amount of testimony to be used in said case. The titles of the respective parties, their testimony, pleas, and learned arguments have been examined, heard, and considered by the court, and our conclusions upon the case have been formed, and we state them briefly as follows:

The chief injury complained of by plaintiffs, is to about three acres of their land, located on the eastern bank of Merrimack river, and between said river and the track of the Concord Railroad, extending for

the whole width of their land, embracing for this distance, what is well known as the bank of said river, and that in consequence of the defendants' dam and flashboards on the same, situate about half a mile below said land, extending across the river, the current of the river has been so changed, and the past and present action of the water has been such, by abrasion and otherwise, as to wear away the land of plaintiffs, to undermine and destroy the plaintiffs' trees, designated as ornamental or shade trees, there growing, and otherwise materially tending to diminish their quantity and to lessen the value of plaintiffs' property.   Plaintiffs purchased their lands in July, 1856, and their title to the lands embraced in their deed, for the purposes of this case, may be conceded to be good; also the existence of plaintiffs' suits at law, as alleged in their bill, may be conceded because admitted by defendants as well as the verdict and judgment in the first case at law; and it is also shown by the defendants, from the clerk's records and certificate, that this first suit has been in due time renewed by the defendants' writ of review; and that both suits at law are still pending on the docket of the Trial Term of the Supreme Judicial Court in this county; and we think, also, that under the proof offered by defendants, it may be assumed, that, so far as the present plaintiffs are concerned, the said defendants have the right to have and maintain a dam, where their present dam is located, with or without flashboards, and to hold back or flow the water in the river, as high and to the extent, as it was customary to maintain and keep up said dam twenty years prior to July 9, 1859, being the time when these plaintiffs first requested or notified the defendants to remove their dam.   And that so far the rights of these parties may be considered as settled by law, because there is no evidence in the case, that the plaintiffs, or those under whom they claim their title, ever complained of any injury to their land, or other property, in consequence of any flowage, or obstruction occasioned by any claim, at the privilege of the defendants, at any time before July, A. D., 1859.

This peaceable, continued, unmolested, well known adverse enjoyment by the defendants, and those under whom they claim, of the right to flow or detain the waters of the river above their dam, as it was during the twenty years prior to the time of said notice, may be regarded as now having become perfected, or ripened into a perfect legal right.   It is the adverse enjoyment of a stream of water for a period of twenty years, which affords of itself presumptive evidence of a grant.   *Gilman* v. *Tilton*, 5 N. H. 231; *Burnham* v. *Kempton*, 44 N. H. 88; *Odiorne* v. *Lyford*, 9 N. H. 502.   It is claimed on the part of the defendants, that the old dam, with its flashboards, as it existed prior to 1837, and as it was then kept, was as high as the present stone dam, which was built or finished in 1840.   This fact is strenuously denied by the plaintiffs.   Upon this point much conflicting testimony was offered by the respective parties.   Sitting as a court of equity, we do not now feel called upon to establish the legal rights of the parties, nor to decide whether a private nuisance here exists, where that fact is controverted, but will require the party asking for the interference of the court first to establish his right by law.   *Burnham* v. *Kempton, ante.*

It is now understood to be the practice in this State and many other jurisdictions, that a court of equity will not interfere in this class of cases, where the parties have a plain and adequate remedy at law. *Burnham* v. *Kempton*, 44 N. H. 88 ; *Bean* v. *Coleman*, 44 N. H. 539 ; *Hodgman* v. *Richards & al.*, 45 N. H. 29 ; 1 Daniel's Ch. 609 ; Eden on Injunctions, 270 ; Angell on Water Courses, 174. And that the right has been established at law must now be regarded as a material averment in plaintiffs' bill before the court of equity will take jurisdiction of the same. We are aware, that the fact is stated in plaintiffs' supplementary bill, that the title of the plaintiffs has been established by a verdict of the jury, and a judgment of this court thereon, in a suit at law, involving the right of the defendants to keep up their dam to the height as claimed by the defendants.

In answer to this averment, the defendants, under the power of the statute law, have brought their writ of review of said action at law and it has been entered at the Trial Term of this court, and is there still pending and undecided. Of course the former judgment is in doubt and legal uncertainty, for upon another trial it may be reversed. A review is a new trial of the issues originally tried. *Knox* v. *Knox*, 12 N. H. 357 ; *Avery* v. *Holmes*, 10 N. H. 574. Hence, it is the final judgment allowed by law, which must be regarded as concluding the rights of the parties in such cases. Therefore the proof offered to sustain the fact, that the plaintiffs have legally sustained or established their right at law, falls short of what is expected and necessary in cases of this kind.

Again, it is doubtless true, that courts of equity, in this State, have by law and practice, a large power and jurisdiction conferred upon them to issue writs of injunction whenever the same shall become necessary to prevent injustice. To justify our interference here, the request being made to issue our final writ of injunction in restraint of the defendants, and the consequences of the exercise of such power being considered important by the defendants, as affecting large pecuniary interests, the plaintiffs should of course show by their proof a case of strong and clear injustice, of pressing necessity and imminent danger, of great and irreparable damage, and not of that nature for which an action at law would furnish a full and adequate indemnity. *Damesville* v. *Dupont*, 18 Ben. Monroe 800 ; *Hood* v. *New York & New Haven R. R.*, 23 Conn. 609 ; *Bolster* v. *Callerline*, 10 Indiana 117 ; *Whittlesey* v. *Hartford & Fishkill R. R.*, 23 Conn. 421 ; *Gray* v. *Ohio & Penn. R. R.*, 1 Grant's Cases, 411 Penn. ; 3 California 238 ; *Jordan* v. *Woodward*, 38 Maine 423 ; *Morse* v. *Machias Water Power Co.*, 42 Maine 119 ; Hilliard on Injunctions, sec. 9, ch. 1, secs. 16, 17, 18, 21, 22, 23, 31, ch. 1 ; also sec. 43 upon the subject of Delay, also sec. 86, ch. 27, subject, Easements, page 448, and subsequent thereto.

On application for an injunction to restrain the defendant from building a new mill for grinding and sawing for the public, on the ground that the construction of the dam would injure the land of plaintiff and the health of his family ; testimony being heard by the court : held by the court, that it is not every slight or doubtful injury that will justify

the use of the extraordinary power of injunction to restrain a man from using his property as his interest may demand, especially, if the injury apprehended may rest in doubt, and the complainant may resort to law to recover his damages.   *Wilson* v. *Strickland*, 2 Jones' Equity, 386.

The practice in our State corresponds with the aforesaid leading authorities, subject to some modifications, varying with the leading circumstances in each case, viz. : *Burnham* v. *Kempton; Coe* v. *Lake Company*, 37 N. H., and other cases, *ante; Wason* v. *Sanborn & als.*, 45 N. H. 169.

Again, in Hilliard upon the law of Injunctions, sec. 39, ch. 1, the principle or law is stated, that where either party may suffer, by the granting or withholding of an injunction, the rule in equity requires the court to balance the inconveniences, likely to be incurred by the respective parties, by means of the action of the court, and to grant or withhold the injunction, according to a sound discretion.   Where an injunction might cause irreparable injury to the defendant, in the event of the plaintiff not being exclusively entitled, and the damage sustained by the plaintiff in the event of establishing his title allows of compensation, the injunction will be refused.

In the aforesaid law of *Wason* v. *Sanborn*, this court has to some extent defined our power, and has claimed for ourselves a suitable and liberal exercise of this discretion, in granting writs of injunction; and that the court will not grant such writs as a matter of course, in the case of private nuisance, even where damages substantial have been recovered, and the plaintiff has established his legal title.   It will consider whether the complainant be entitled to equitable relief, and, moreover, will not grant it where an injunction will not restore the party to his former position.   *Wood* v. *Sutcliffe*, 2 Simons N. S. 163 ; *Attorney General* v. *Nichols*, 16 Vesey 333 ; *Tucker* v. *Carpenter*, 1 Hemphill 440 ; Adams' Equity, 211 ; *Fishmongers' Company* v. *East Ind. Company*, Dick R. 161.

In a recent English case, it is said, the jurisdiction of this court over cases of nuisance, by injunction at all, is of recent growth, and has not till lately been much exercised, and has at various times found great reluctance, on the part of learned judges, to use it, even in cases where the thing or act complained of was admitted to be directly and immediately hurtful to the complainant.   See Lord Brougham, *Ripon* v. *Hobart*, 3 Mylne & Keen 169.   So where damages can compensate the injury or loss suffered from a nuisance, *equity* will not interfere ; nor if the evidence is conflicting, and the injury doubtful, eventual, or contingent.   *Laughlin* v. *President*, &c., 6 Indiana 223 ; *Butler* v. *Rogers*, 1 Stockton 487 ; *vide* secs. 1 and 2 Hilliard on Inj. against Nuisance, pages 269, 270..   The amount of the injury is sometimes a material consideration, the court refusing to interfere where the damages were trivial.   *Attorney General* v. *Sheffield Gas Company*, 19 Eng. Law and Equity, 639.

Again, it is objected by the defendants, that the plaintiffs decline to give this court full jurisdiction of their case.   They bring forth their ·

two suits at law and no final judgment is obtained in either of them. They then bring their bill in equity, and ask this court for the writ of injunction, and among other things, for *damages*, since the last or second suit at law. We approve of the plaintiffs prosecuting one of these suits at law to final judgment, so that their legal right be fully established, and they have doubtless the right to resort to another suit at law. But when a party brings forth his two suits at law before he appeals to the equitable tribunal, we think the presumption may be fairly entertained, that he has elected a favorite remedy and must abide by it, and should not ask for equity while inflicting a multiplicity of suits at law upon his opponents.

As before intimated, we think it would be inconsistent with the ends of justice and the approved practice in equity, to permit the plaintiffs to proceed in this court, and at law at the same time for the same claims, to ask for a remedy in a court of equity. *Sawyer* v. *Wood*, 4 Johns. Chanc. 416; Story's Eq. sec. 746, and note; and the authorities quoted by defendants in second brief. The plaintiffs, having obtained compensation in one suit at law, and without, however, bringing it to final judgment, and not proposing to abandon their second suit at law, ask the court for other adequate damages, and for the writ of injunction, and otherwise to prescribe for them full and ample redress for *all* their *grievances*, without giving us control of their whole case.

In the recent English case of *Prothers* v. *Phelps*, 35 Eng. Law and Equity Rep., 518, the question of practice is discussed, and it is there settled, that a plaintiff, who comes to this court for its aid, is bound to put under their control his legal rights relating to the whole subject matter of litigation. As the present case is now situated, we must regard it as quite clear, that we have not full or complete jurisdiction over plaintiffs' suits at law. We can exercise at best only a doubtful or divided jurisdiction, and for this reason we may now properly decline to act at all.

Since the plaintiffs purchased their lands in 1856, they do not show, allowing all they claim, the loss of but a small amount of their land, and perhaps a few trees by means of the water in the river. Defendants say that the loss or damage claimed by plaintiffs, is to be attributed to other causes than to defendants' dam, more especially to the cutting away the trees on the banks, for the purpose of using their lands as rolling-ways for stones and logs, and to the natural, common, and usual effects of freshets, particularly to ice freshets, which break down the little trees on the banks of the river, and wear off the soft banks of the river in seasons when the frost is coming out of the ground, and from filling in of the river above plaintiffs' land by the Concord Railroad with rubble, also by digging away the river bank, thereby changing the natural current of the stream, and to the prejudice of the plaintiffs' land, and some other causes fully set forth in the arguments of the counsel, other than defendants' dam, contending, that defendants' dam has a tendency to protect the bank of the river bordering on the plaintiffs' land rather than to injure it. Now, without going into the examination of all the causes in detail which may affect more or less plain-

tiffs' land, yet when looked at in the aggregate effect produced, giving the evidence on both sides such consideration as we think it entitled to, but not intending, however, on this point to conclude the plaintiffs, or to prejudice their legal rights, we come to the conclusion that their damages are slight or inconsiderable, and may well be compensated by suits at law, and that, for the reasons assigned, the bill should be dismissed.